## HOUGHWOUT *vs.* BOISAUBIN.*

1. An offer or proposal by one party to sell to another, unsupported by any consideration, may be withdrawn at any time before acceptance.

2. When accepted, it becomes a contract which may be enforced in equity.

3. Where one has "until" a certain day to accept, the acceptance may be made on that day, if the offer be still open.

4. If the proposal be clear and definite, and one to which a simple assent is a complete answer, such assent may be given either by writing, by acts, or by words. The statute of frauds requires the writing to be signed only by the person to be charged.

5. When the offer has been turned, by acceptance, into a contract, each party will have a reasonable time in which to perform it.

6. What delay will become such laches as to forfeit the right to enforce specific performance, must depend on the circumstances of each case. While equity requires the party who would enforce specific performance to be vigilant and prompt, it does not discourage purposes of settlement or reasonable delays for that purpose.

---

This cause was argued on final hearing, upon the pleadings and proofs, before Amzi Dodd, esq., one of the masters of the court.

*Mr. Pitney* and *Mr. Parker*, for complainant.

*Mr. Vanatta*, for defendant.

THE MASTER.

This bill is filed to enforce the specific performance of a part of an agreement between Eder V. Houghwout and Amidee Boisaubin, of which the following is a copy:

---

*CITED *in* Cutting v. Dana, 10 C. E. Gr. 274; Scott v. Shiner, 12 C. E. Gr. 187; Union Loc. & Ex. Co. v. Erie R. Co., 8 Vr. 29.

NEW YORK, 24th Sept., 1863.

Agreement made this day, between Mr. Amidee Boisaubin and Eder V. Houghwout, for the sale and purchase of a farm of seventy acres of ground, situate at Cedar Grove, Madison, state of New Jersey, said seventy acres of farm land lying opposite to the residence of Mr. George Pomeroy, for the sum of nine thousand dollars. Mr. Boisaubin agrees to sell, and Mr. Houghwout agrees to purchase said farm, with all its improvements, fences, out-houses, barns, &c., now upon said premises, for the sum of nine thousand dollars. Mr. Boisaubin is to give a full and clear warrantee deed for the same, and permit Mr. Houghwout to employ a proper lawyer to search the title ; the cost of said search to be divided between the parties. The land is to be surveyed, and a plain map of the same to be attached to the deed, and Mr. Boisaubin guarantee that the land shall not be less than seventy acres. The examinations of the title, &c., to be made as soon as convenient, and the deeds to be delivered and payment to be made on the fourth day of November, 1863, at the office of Mr. Houghwout, 490 Broadway. Mr. Boisaubin also agrees to sell to Mr. Houghwout the plot of land of about twenty-two acres, called the Spencer woods, for the sum of two hundred dollars per acre, and Mr. Houghwout has until the first day of March, 1864, to accept of the proposition.

Mr. Boisaubin also agrees that Mr. Houghwout may go on and make improvements on the land, even before the deeds are delivered and money paid, but must not make such changes before that time as would injure the property or be objectionable to Mr. Boisaubin.

AMIDEE BOISAUBIN.<br>E. V. HOUGHWOUT.

Signed in the presence of
WM. MARGEORGE, JR.

The part of the above agreement which is sought to be specifically enforced, is that relating to the sale of the tract called the Spencer woods. The other tract of seventy acres was

duly conveyed to Houghwout by Boisaubin, by deed of November 11th, 1863; the time named in the agreement having been extended, by consent, to that day.

A few days after the first of March, 1864, Boisaubin notified the attorneys of Houghwout, Messrs. Hull, Conable and Arnold, in the city of New York, that he would not convey the tract in question to Houghwout; and on the thirty-first day of August, 1865, this bill was filed to compel such conveyance.

It is resisted by Boisaubin on the grounds: 1. That the clause of the agreement relating to the Spencer woods was not, at the time the agreement was made, a *contract* between himself and complainant, but a mere *offer* or *proposal* on his part, unsupported by any consideration, and liable, at any time before acceptance, to be withdrawn or revoked.

2. That such offer or proposal was never afterwards changed into a contract by anything done on the part of Houghwout. That, in other words, it was not lawfully accepted, either in manner or time.

3. That if such offer did become a contract capable of being enforced against him in equity by the complainant, he has by his laches, lost his right to have it enforced.

Looking at the agreement by itself, and apart from the proofs, it is clear, I think, that the first position is a good one. The stipulations about the Spencer woods are termed in the agreement a *proposition.* Nothing is said from which it can be fairly inferred that the option of purchasing *this* lot, was a part of the consideration or inducement for the purchase of the other. Nor does the evidence in the cause sufficiently show that it was so regarded by the parties to the agreement whatever may have been the thoughts of the complainant, when the agreement was made. The proposal or offer might have been withdrawn at any time before its acceptance by complainant.

As to the second of these grounds, it is said by the defendant, that such acceptance could be made but in one of two ways; either (1) by payment or legal tender of the money

agreed to be paid; or (2) by an acceptance in *writing;* and further, that such acceptance could not be made after the twenty-ninth day of February, 1864.

Neither of these insistments, respecting the character of the acceptance required, or the limit of the time fixed by the agreement for making it, is correct. Houghwout had "until the first day of March, 1864, to accept of the proposition." The construction put upon this language by the defendant himself, was that *it included the last named day.*

He was at Morristown the preceding day, had a conveyance prepared by his attorney from himself to Houghwout, executed and acknowledged it, and took it home with him to Madison, ready for delivery *on the next day* (which was the first of March), in case it should be called for by Houghwout. The meaning, then, given by Boisaubin to the words "until the first of March," was, I think, the natural and proper one. It is supported also by authorities. 16 *Barb.* 347; 3 *Dowl. P. C.* 535.

As to the character or nature of the acceptance by Houghwout, requisite to convert this proposal into a contract capable of being specifically enforced in equity:

If the proposal be clear and definite, and one to which a simple assent is a complete answer, such assent may be given either by *writing,* by *acts,* or by *words.* The statute of frauds requires the writing to be signed only by the person to be charged. *Fry on Spec. Perf.,* § 181–2–3; *Sug. on Ven.,* § 3, *ch.* 3, ¶ 2, 3, 8, 11, 12, 28, 30, 38.

It is true that mutuality is an essential quality of a contract to be specifically enforced. It is the familiar doctrine, that whenever the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. But a class of cases exists, which are called conditional contracts, in which the quality of mutuality, if not wanting, is somewhat apparently modified; as, where a lessor covenants to renew upon the request of his lessee, or where the agreement is in the nature of an undertaking: when the condition has been made absolute by a

request to renew, or by an assent to, or an acceptance of, the undertaking, they would seem to be mutual, and capable of enforcement by either party alike. *Fry on Spec. Perf.*, § 291.

If, therefore, the complainant, on or before the first day of March, gave his assent to, or in other words his acceptance of, the proposal of Boisaubin, (which it is not denied remained until that time a continuing and unrevoked offer,) either in writing, or by words, or by tender or payment of the price to be paid, he was entitled to receive from the defendant a conveyance of the lot.

It was necessary that the acceptance should be made on or before the first day of March. After such acceptance, each party to the contract had a reasonable time in which to perform it; Boisaubin to prepare and deliver his deed; Houghwout to pay the consideration. Neither party had a right to insist that the fulfillment or performance of the contract should be made on the last day named in the agreement. It is important, I think, to observe this distinction, because it does not seem to have been sufficiently noted at the time, and occasioned misconceptions as to the obligations and rights of both of the parties concerned.

In January, 1864, the complainant left New York for New Orleans, and did not return till April. Before leaving, he instructed his attorney, Solomon L. Hull, who had acted as such attorney for him in the purchase of the seventy acres, to carry out the purchase of the Spencer woods, and obtain from Mr. Boisaubin a deed for the same during his absence, if that should continue beyond the limited time. While in New Orleans he wrote to his firm in New York, directing the funds to be furnished to Hull, and sending to him his instructions to complete the purchase. Afterwards, and probably a few days before the end of February, Mr. Boisaubin called upon Hull, at his office in New York. As to what passed between them in that interview, the statements of Hull, who was sworn as a witness, are contradicted by the answer of Boisaubin.

Hull says : " He (Boisaubin) inquired if Mr. Houghwout

was going to take the Spencer woods. I told him he was. He wanted to know when he would take the deed and pay the money. I told him about the first of March, the time called for in the contract. He said that was like Mr. Hough-wout's meanness, to cheat him out of the interest by not taking the deed before. I asked him if he would bring the deed on the first of March to my office in New York, and receive the money. He said, no; he would execute the deed, and leave the whole matter with Mr. Dalrimple to settle with me. I told him that Mr. Houghwout said that the deed was to be taken subject to the mortgage then on the Spencer woods, and he replied that that was the understanding."

Mr. Boisaubin, in his answer, admits that he saw Mr. Hull in New York at the time spoken of by Hull, but denies that anything was said between them in regard to the purchase of the Spencer woods. He does not state what was his object in going to Hull's so near to the time when the acceptance was to be made, if at all; nor what was the subject of their conversation; nor was he sworn as a witness in the cause to deny or explain what had been testified to by Hull. He denies that there was an agreement or understanding between Houghwout, or Hull, and himself, that the deed was to be given for the property, subject to the Brittin mortgage then existing thereon for the principal sum of $3254. But it appears that on the twenty-ninth of the month, he went to Morristown and obtained from Mr. Dalrimple a deed made in this way, and that he took it with him to Madison to deliver if required, the next day; and by the letter of Mr. Dalrimple, written to him the same day, at Madison, after his return, it appears that he was undecided, and considering whether he should go or not, the next day, to New York. These circumstances are consistent with the statements of Hull as to the interview in New York, and tend, I think, strongly to corroborate them. The contradiction or dis-crepancy between them as to what occurred at this interview, may be explained by attributing the negative statements of Boisaubin, in his answer, to his failure to recall, at that time,

what had been said; an explanation so much more probable in itself, and consistent with the admitted facts in the case, that I cannot much doubt that the statements of Hull are substantially true. If true, a sufficient and valid acceptance was then made of Boisaubin's offer.

On the twenty-ninth of February, Hull sent his partner, Mr. Arnold, to Madison, to get the deed from Boisaubin, and settle with him for the price to be paid. Arnold, on arriving at Madison, found Boisaubin had gone to Morristown, and after some conversation with his brother, went to Morristown, to the office of Mr. Dalrimple. Before leaving Boisaubin's house, at Madison, some conversation was had between his brother and Arnold, as to the particulars of which they do not fully agree in their testimony as witnesses. They agree that Arnold stated that Houghwout had accepted Boisaubin's offer for the Spencer woods, and that he had come from New York prepared to settle the business; that one of them suggested that Boisaubin had gone to the office of Mr. Dalrimple in reference to the business, and that he might be expecting to go the next day to New York. However the discrepancies in their statements may be explained, it is apparent from the statement of each, that Boisaubin himself had talked of going the next day to New York, and is an additional circumstance to show, incidentally and strongly, that Hull's testimony as to the interview at his office a few days before, is to be taken as true.

Before Arnold got to the office of Mr. Dalrimple, Boisaubin had started on his way back to Madison. The letter to him from Mr. Dalrimple, written and received that day after his return, together with the statements to him by his brother, showed him that Houghwout's attorneys were prepared, and anxious on his behalf to consummate the purchase. They show that Boisaubin was anxious to avoid it. The messages communicated that day, both from his attorney and his brother, respecting the declarations and acts of the attorney of Houghwout in his efforts to consummate the purchase, amount, I think, in substance and effect, to a new and suffi-

cient declaration from Houghwout that he had accepted Boisaubin's offer.

On the next day Boisaubin was at home with the conveyance ready for delivery, and Houghwout's attorneys were expecting him at their office in New York. In the afternoon of that day, as Mr. Boisaubin did not appear, the letter was mailed to him from the attorneys, of which a copy is given in the answer of Boisaubin, and in the affidavit of Arnold appended to the bill. This letter may be fairly regarded as another, and a written acceptance by Houghwout of Boisaubin's offer. It implies that a previous acceptance had been made; that they had been waiting and expecting that day to close the business of the purchase; and requests him to name a day convenient to himself when it might be done. This letter furnished to Boisaubin undeniable evidence that they considered the agreement for the sale mutual and complete, and that it remained only to carry the agreement or contract into execution. "The contract is perfected by the posting of a letter declaring the acceptance, because thereby the acceptor has done all that is requisite on his part, and is not answerable for the casualties of the post-office. Hence it follows that the contract dates from the posting, and not from the receipt of the letter of acceptance. In case of there being an agent for the proposer, the communication of the acceptance to him completes the contract, though the agent may fail to make known the acceptance to his principal." *Fry on Spec. Perf.*, § 185; *Vassar* v. *Camp*, 1 *Kernan* 441; *Mactier* v. *Frith*, 6 *Wend.* 103.

After the first day of March it was competent for either party to claim from the other, performance of the contract, completed by acceptance on the one side, of the proposal on the other. Each had a reasonable time for such performance. Boisaubin, however, notified the attorneys of Houghwout that *he would not deliver the deed*. He did so in two different ways within a few days from the first day of March; once through the letter of Mr. Williamson, and once by his distinct declarations to that effect to Arnold, in Madison. After

these distinct and unqualified refusals, no further demands or tender were requisite on the behalf of the complainant. His right to seek a specific performance in equity was then, I think, complete.

Did he lose it by delay or by waiver?

I am of opinion he did not. In view of Houghwout's instructions to his attorneys on his return from New Orleans, of the notice given by them to the defendant that the claim would be sued, of the sickness of Hull, and the consequent delay in preparing the bill of complaint, the time that elapsed before the filing of the bill ought not to be taken as proof that Houghwout had abandoned or was sleeping on his rights. From the nature of the case, no definite rule can be given fixing the time within which a suit to enforce such rights should be brought. While equity requires the party who would enforce them to be vigilant and prompt, it does not discourage purposes of settlement, or reasonable delays for that purpose and the avoidance of unnecessary suits.

Upon the facts and the law of this case, I am of opinion that the complainant is entitled to a decree for specific performance. As it appears that some portions of the land have been alienated or encumbered by the defendant, I would advise, together with a decree for specific performance (if complainant elects to accept a conveyance for such interest or estate as Boisaubin may own), a rule of reference, to settle the amount and value of such interest, and what may be due on the existing encumbrances or liens.