45 N.J. Super. 523 (1957)
133 A.2d 341
M.N. AXINN COMPANY, PLAINTIFF-RESPONDENT,
v.
GIBRALTAR DEVELOPMENT, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1957.
Decided June 21, 1957.
*525 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Roger H. McGlynn argued the cause for appellant (Messrs. McGlynn, Stein & McGlynn, attorneys).
Mr. Walter J. Bilder argued the cause for respondent (Messrs. Bilder, Bilder & Freeman, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a judgment entered in favor of plaintiff by the Law Division *526 judge, sitting without a jury, in an action based upon defendant's written guarantee of payment for certain building materials to be supplied by plaintiff to Chad-Mal Corporation.
The basic facts are undisputed; most of them are stipulated. Plaintiff is a New York corporation engaged in supplying building materials, and defendant is a New Jersey corporation engaged as developer in the construction and sale of private homes. Defendant contracted with Chad-Mal Corporation, a New Jersey company, as general contractor to erect 100 homes in a development on defendant's tract at Sayreville, New Jersey. On March 21, 1952 plaintiff entered into a contract with Chad-Mal to supply lumber and certain building materials to be used on the project, but acceptance of the agreement by plaintiff was expressly made contingent upon its approval by plaintiff's credit department, and that approval, in turn, was conditioned upon defendant's guarantee of payment by Chad-Mal. Gibraltar was interested in this credit being extended to Chad-Mal, and notified plaintiff that it would enter into such a guarantee arrangement.
By letter to plaintiff dated March 28, 1952, defendant agreed that in consideration of plaintiff's execution of the agreement with Chad-Mal dated March 21, and to induce plaintiff to extend credit and sell and deliver the materials set forth in that contract, it would be "corporately liable as guarantor" of the contract and pay for materials delivered thereunder if Chad-Mal refused and neglected to make payment when due. Immediately upon receipt of the letter of guarantee on March 31, plaintiff's credit department approved the proposed contract with Chad-Mal. On that same date plaintiff notified Chad-Mal that it had received the guarantee, that it approved the proposed contract, and that the contract had become a binding agreement. At the same time plaintiff entered upon the performance of its contract by putting into work material which was to be delivered to Chad-Mal.
*527 On April 1, the day after plaintiff had entered into this binding agreement with Chad-Mal, it received a letter from defendant's attorney, dated March 29, reading as follows:
"In connection with corporate guarantee of Gibraltar Development Inc. of even date, please be informed that same is expressly conditioned and subject to your responsibility to forward copies of all invoices and statements, either to me or to said Gibraltar Development Inc. at my office, simultaneously with copies sent to Chad-Mal Corporation covering every delivery of materials to the job. All invoices and statements are to indicate the # of the house or lot and block number of the house for which same are ordered. All deliveries are to be made to the project and no other place.
Kindly acknowledge the conditions herein set forth, by signing the copy of this letter herein enclosed and returning same to me immediately."
On receipt of this letter plaintiff wrote at the bottom: "Contents of this letter are acknowledged as part of the corporate guarantee of Gibraltar Development Inc., as though more fully set forth at length therein, this 1st day of April, 1952." The letter, thus subscribed, was then returned to defendant.
Plaintiff began delivery of building materials to Chad-Mal on April 2, 1952, and continued to do so until December 9, 1952, when all deliveries were completed. Plaintiff never complied with the condition recited in defendant's March 29 letter; it did not forward copies of invoices and statements to defendant simultaneously with those sent to Chad-Mal covering delivery of materials to the job. However, it was stipulated that defendant "had knowledge of the making of all of said deliveries of material by plaintiff and had knowledge that all of said material was incorporated into houses built for defendant by the said Chad-Mal Corporation and owned by defendant." On August 9, 1952 defendant wrote plaintiff purporting to cancel its corporate guarantee because it had not received any invoices covering purchases by Chad-Mal. Nevertheless, as noted, plaintiff continued deliveries until December 9.
As of November 1, 1952, the account of plaintiff and Chad-Mal was in balance. However, plaintiff thereafter delivered to Chad-Mal materials costing $11,818.14. Of *528 this amount about $6,000 represented the price of material delivered under the contract, and hence guaranteed by defendant. For this plaintiff received no payment.
In the latter part of 1952 Chad-Mal sued defendant in the Law Division for the balance allegedly due it on the general building contract, and recovered judgment of $11,500 which, less an attorney's lien of $3,000, resulted in a net recovery of $8,500. At about the time this law action was instituted, a number of stop notices were filed by subcontractors against defendant, as owner and developer of the tract, claiming amounts due under their contracts with Chad-Mal. Confronted by these claims, including one on the part of plaintiff against Chad-Mal, defendant instituted an interpleader action in the Chancery Division to have the court determine what amounts were due and owing the several stop notice claimants. This interpleader action was begun prior to the disposition of the Law Division action brought by Chad-Mal. When the latter was terminated by a judgment which netted Chad-Mal $8,500, defendant paid the sum to the clerk of the court in the interpleader action. Eventually, in April 1955, the Chancery Division entered judgment determining that only plaintiff and one other claimant had any rights in the $8,500 fund on deposit with the clerk, and after allowing a counsel fee, directed that the balance be paid to these defendants pro rata. The result was that plaintiff received $6,362.88 on account of its claim. It applied this sum first against that portion of its account with Chad-Mal representing sales of material outside of the contract that had been guaranteed by defendant. This it had a clear right to do. The balance of the interpleader recovery was applied to the guarantee account, reducing plaintiff's claim against defendant to the sum of $5,455.26. It was to recover this balance that plaintiff instituted the Law Division action now under review.
Defendant raised three defenses to that action, claiming that (1) plaintiff's cause of action was res judicata by reason of the interpleader judgment entered in the Chancery Division, which judgment had been paid and satisfied by *529 defendant; (2) plaintiff had failed to perform the condition precedent to defendant's alleged obligation of guarantee, by failing to forward copies of all invoices and statements to it simultaneously with those sent to Chad-Mal covering deliveries to the job; and (3) defendant had by its letter of August 9, 1952 cancelled and terminated its guarantee. The first defense was stricken in the course of the Law Division's consideration and denial of cross-motions for summary judgment made by the parties. After pretrial and the amendment of the pleadings pursuant thereto, the filing of a stipulation as to agreed facts, and brief testimony on a single disputed question taken by the court sitting without a jury, the trial judge held that plaintiff's claim of $5,455.26 balance due for material delivered to Chad-Mal was within the terms of the contract of guarantee; that defendant's letter of cancellation was legally ineffective; that the letter of March 29 by which defendant sought to make the forwarding of copies of all invoices and statements a condition precedent to its corporate guarantee, and which letter plaintiff had acknowledged as part of the guarantee, was not supported by an independent consideration and therefore was legally unenforceable. Judgment was accordingly entered in favor of plaintiff in the amount of the claim plus interest, totalling $6,737.23, and costs.
Defendant appeals from this final judgment and also from the order striking its first separate defense. It raises two points in its principal brief: (1) plaintiff's present cause of action is barred by its failure to set off its claim in the prior interpleader action, as required by R.R. 4:13-1; and (2) its letters to plaintiff dated March 28 and 29, 1952 together constitute the parties' agreement, and plaintiff's breach of the condition relating to the sending of invoices and statements entitles defendant to judgment in its favor. In its reply brief defendant urges an additional point, admittedly not suggested or argued below: (3), that even if the terms recited in the letter of March 29 be deemed a supplemental agreement, it is not invalid for lack of consideration since it was consummated in New York where, *530 by statute, such agreements are valid and enforceable though not supported by independent consideration.
It should be noted that defendant's first argument was not presented in precisely its present form in the trial court. There its answer set up by way of first separate defense that plaintiff's action was res judicata by virtue of the interpleader judgment. We relate the present argument to that defense in order to dispose of it on the merits, realizing that defendant's notice of appeal did state in part that it was appealing from the order striking its first separate defense.
In support of its position, defendant refers to the provisions of R.R. 4:13-1, which reads:
"A pleading may state as a counterclaim any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim, except that any defendant failing to set off a liquidated debt or demand, or a debt or demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such debt or demand which might have been set off under the provisions of this rule."
Cf. N.J.S. 2A:15-48. Defendant contends that at the time of the previous interpleader action, the amount sought in this action was within the scope and intendment of the rule. Though not liquidated, it was readily "capable of being ascertained by calculation." All that was required, says defendant, was that plaintiff subtract from its asserted total claim the amount received in the interpleader action under the pro rata distribution. The fact that plaintiff did not know the exact amount it was going to be awarded pro rata should make no difference; the counterclaim should still have been asserted, and disposition of it could have been determined after the main case was resolved, when the parties' respective credits had been calculated.
Defendant lays great stress on the main objectives fostered by the quoted rule:
"* * * First: the Constitutional mandate to settle all phases of the controversy in litigation by means of a single action, including *531 both legal and equitable aspects (Art. VI, Sec. III, Par. 4). Second: the overall scheme of the rules, to permit as many controversies, as may be pending between a plaintiff and a defendant, to be combined in a single action, and here again without regard to the character of the claim.
* * * R.R. 4:13 is aimed at avoiding circuity of action, piecemeal and multiple litigation, inconvenience, expense, expenditure of the court's time, undue delay and injustice. * * *" 2 Schnitzer and Wildstein, New Jersey Rules Service, A IV-323-324.
Citing New Jersey Highway Authority v. Renner, 18 N.J. 485, 492 (1955).
It has been held that under our present practice a counterclaim may be asserted against a plaintiff who files an interpleader action. Jersey Ins. Co. of New York v. Altieri, 5 N.J. Super. 577 (Ch. Div. 1949). But because such assertion is permissible, it does not follow that, assuming the claim to be liquidated or readily capable of being ascertained by calculation, it must be set up by way of counterclaim because of the modern requirement of settling an entire controversy between litigants in but a single action, Ajamian v. Schlanger, 14 N.J. 483 (1954), and thus avoiding piecemeal litigation, Tumarkin v. Friedman, 17 N.J. Super. 20 (App. Div. 1951), or a multiplicity of suits, Galler v. Slurzberg, 22 N.J. Super. 477 (App. Div. 1952).
Under R.R. 4:13-1 such a claim must be set up by counterclaim only against "the opposing party," and the rule refers only to such debt or demand as might have been "set off" under its provisions. When it brought its interpleader action in the Chancery Division, defendant (then plaintiff) was not an "opposing party" to plaintiff (then defendant). All it was alleging in the Chancery Division was that the defendants there had asserted claims against it, or at least against a fund in its possession; and the interpleading plaintiff asked no more than that it be permitted to pay the fund into court and let the defendants there settle the dispute among themselves. In the present action defendant, referring to the interpleader action, says, "the very purpose of that action was to have one court, the Chancery Division, determine to whom and in what amounts *532 monies were owing by Gibraltar." And by the last paragraph of its interpleader complaint Gibraltar alleged that it was "unable to determine to which of the defendants herein named such sum, as is found to be justly due and owing * * *, rightfully belongs, and offers upon the determination of such amount to pay the sum into this court."
The very words "set off," used in the rule and in N.J.S. 2A:15-48, plainly connote an action in which a plaintiff alleges a claim against a defendant and seeks a money judgment against the latter on that claim. But in an interpleader action the plaintiff does not assert a claim against any of the defendants, so that there was no claim against which plaintiff here (a defendant in the interpleader action) could have "set off" the claim alleged in this action.
We hold, therefore, that while counterclaims against a plaintiff are permissible in an interpleader suit, they are not thereafter barred for failure to assert them in that action, even if liquidated or capable of being ascertained by calculation. And we agree with the trial court that the defense of res judicata raised by defendant in its answer to the present action was not a valid one.
We turn to defendant's argument that by plaintiff's acknowledgment of the letter of March 29 as part of defendant's corporate guarantee, the condition relating to the sending of invoices and statements became a part of the guarantee agreement. Admittedly, plaintiff sent defendant no copies of invoices or statements covering merchandise it had delivered to Chad-Mal on the job. Plaintiff's answer to defendant's contention, concurred in by the trial judge, is that prior to plaintiff's acceptance of the supplemental condition there was already in existence a guarantee agreement which was fully executed, insofar as plaintiff was concerned, because it had on the strength of the guarantee agreement in its original form committed itself to a contract with Chad-Mal by which it undertook to supply all lumber required by Chad-Mal for the houses it was to build for defendant. We agree with plaintiff's argument that the letter of guarantee executed by defendant on March 28 *533 purported to be a complete and integrated instrument. It was delivered to plaintiff to induce it to enter into the contract with Chad-Mal. It achieved its purpose, for immediately upon receipt of the guarantee on March 31 plaintiff accepted and approved the contract with Chad-Mal that it had prepared on March 21, and firmly bound itself to make the deliveries required under that contract. In fact, it at once commenced actual work looking toward the performance of the contract.
Consequently, the subsequent agreement to incorporate another condition into the guarantee agreement was without consideration and not binding upon plaintiff. The plain fact is that under the claimed new, modified guarantee agreement defendant would be obligated in exactly the same terms and measure as under the guarantee agreement of March 28, but plaintiff would be called upon to do further acts not included in the original agreement. It is elementary that a subsequent agreement, if it is to impose the obligation of a contract, must rest upon a new and independent consideration. As was said in Levine v. Blumenthal, 117 N.J.L. 23, 27 (Sup. Ct. 1936), affirmed per curiam 117 N.J.L. 426 (E. & A. 1937), "The principle is firmly imbedded in our jurisprudence that a promise to do what the promisor is already legally bound to do is an unreal consideration." And see 1 Williston, Contracts (rev. ed. 1936), § 130, p. 443; Gallicchio v. Jarzla, 18 N.J. Super. 206 (Ch. Div. 1952).
Defendant, however, contends that the new agreement constituted not a separate agreement but part of the original agreement, and the two instruments should be read as one. In support of this, it points to the generally recognized rule of interpretation that where a complete agreement is encompassed in more than one instrument, the court will look to all the instruments to determine the intention of the parties. With this principle we can have no quarrel, but it has no application in the factual situation before us. Lawrence v. Tandy & Allen, 14 N.J. 1 (1953); Schlossman's, Inc., v. Radcliffe, 3 N.J. 430 (1950), and Meola *534 v. Gorga, 27 N.J. Super. 390 (App. Div. 1953), cited to us by defendant, are clearly distinguishable on their facts. Unlike in those cases, there is here present no evidence whatever to support the view that the parties did not regard the basic original guarantee agreement, at the time it was executed, as representing their full and comprehensive understanding. The supplemental agreement calling for the delivery of invoices and statements was plainly an afterthought by defendant and not part of the original bargain.
Defendant makes the additional argument that the alleged supplemental agreement constituted an implied partial rescission of the guarantee agreement dated March 28. It suggests that the mutual consent of the parties provides sufficient consideration for the rescission, and therefore this consent to the change in the original guarantee is in itself sufficient to make the supplemental condition binding upon plaintiff. The argument is not a new one. It has been characterized as one of the two principal unsound arguments advanced against the necessity for consideration to support a supplemental agreement. 1 Williston, Contracts (rev. ed. 1936), § 130A, p. 447. Moreover, as stated in the very authority cited by defendant, 5 Corbin on Contracts, § 1236, p. 960, a contract, in order to be susceptible of rescission by mutual consent, must be executory on the part of both parties. But here we do not have an agreement of the type Corbin discusses  one that is "still a bilateral contract"; rather, as already emphasized, the guarantee agreement of March 28 was completely executed by plaintiff since it had irrevocably obligated itself to Chad-Mal by accepting the contract with that company, and had thereby done everything which was required of it under its agreement with defendant as consideration for the guarantee.
We deal, finally, with defendant's third point, raised in its reply brief for the first time anywhere and invoking New York statutory law in aid of its case. Frankly acknowledging that the raising of a new point at this late stage of the proceedings is not to be encouraged, defendant nonetheless urges that we exercise our discretionary original *535 jurisdiction under R.R. 1:5-4 (made applicable to the Appellate Division by R.R. 2:5), to the end that there may be a complete determination of the cause. The argument made is that the point now raised is not factual; there was no jury trial below; the trial court decided the matter upon the pleadings, pretrial order, a stipulation of facts and legal argument, and nothing more.
Defendant's reference is to section 33(2) of the New York Personal Property Law, 40 McKinney's Consolidated Laws of New York, Personal Property, § 33(2):
"An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, * * * shall not be invalid because of the absence of consideration, provided that the agreement changing, modifying or discharging such contract * * * shall be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent." (page 326).
Cf. the Uniform Written Obligations Act (1925), set out and discussed in 1 Williston on Contracts (rev. ed. 1936), § 219A, p. 663. Although the law of New York was not pleaded under section 1 of our Uniform Judicial Notice of Foreign Law Act (N.J.S. 2A:82-27), or even mentioned in the trial court, this court may, under section 2 of that act (N.J.S. 2A:82-28), "inform itself of such laws in such manner as it may deem proper * * *." The act is remedial and should be liberally interpreted. Colozzi v. Bevko, Inc., 17 N.J. 194, 204 (1955).
In its original brief defendant argued that our requirement of consideration to support a supplemental agreement of the kind we have before us is "an ancient legal doctrine," "hard and uncompromising," which should be over-ridden in this case. The New York statute, it presently urges, provides the means of doing so. The validity of a contract  so runs its argument  is to be determined by the law of the place of the contract, Colozzi v. Bevko, Inc., above, 17 N.J., at page 202; the parties' manner and mode of contracting was by use of the mails, and when plaintiff subscribed and returned defendant's letter of March 29 by *536 posting it in New York, the validity to be given that letter was then and there effected. A contract arising from use of the mails is deemed to be entered into when the offeree posts his acceptance. Northampton Mutual Live Stock Ins. Co. v. Tuttle, 40 N.J.L. 476, 479 (Sup. Ct. 1878); Houghwout v. Boisaubin, 18 N.J. Eq. 315, 322 (Ch. 1867); accord Restatement, Conflict of Laws, § 314, p. 399 (1934). Defendant therefore contends that the place of contracting in the case at bar was New York and that the New York statute here invoked applies. Gould v. Hillyer Instrument Co., 126 N.Y.S.2d 282 (Sup. Ct. 1953); Salinas v. Salinas, 187 Misc. 509, 62 N.Y.S.2d 385 (Sup. Ct. 1946), affirmed 271 App. Div. 917, 67 N.Y.S.2d 692 (App. Div. 1947); Moore v. Scott Stamp and Coin Co., 178 F.2d 3 (2 Cir. 1949).
The question is whether we should exercise our discretion under R.R. 1:5-4 and permit the making of a completely new point at this late stage of the proceedings. The law is that a point not urged below will normally not be permitted to be made on appeal except where a question of public policy or jurisdiction is involved. State ex rel. Wm. Eckelmann, Inc., v. Jones, 4 N.J. 207, 214 (1950), rehearing denied 4 N.J. 374, 377-379 (1950), where Chief Justice Vanderbilt reviewed the cases and authorities, and the Supreme Court refused to consider a constitutional question because it was not raised below. Cf. State v. Guida, 119 N.J.L. 464 (E. & A. 1938); Shaw v. Calgon, Inc., 35 N.J. Super. 319 (App. Div. 1955); Spear v. Lyndale Mfg. Co., 35 N.J. Super. 385 (App. Div. 1955); Isola v. Borough of Belmar, 34 N.J. Super. 544 (App. Div. 1955); Waldor v. Untermann, 10 N.J. Super. 188 (App. Div. 1950).
Clearly, no question of public policy or jurisdiction is here involved, nor are there present those "special circumstances" (State ex rel. Wm. Eckelmann, Inc., v. Jones, above, 4 N.J., at page 379) which, in a limited number of cases have prompted our courts to exercise their discretion and consider on appeal a question not previously raised.
*537 The overriding principle is that justice be done. A court's discretion should never be exercised where to do so might lead to an unjust result. The fact is that defendant knew of all of the deliveries by plaintiff to Chad-Mal, and it is freely admitted that all the material delivered was incorporated in the houses built by Chad-Mal for defendant. It would be inequitable to release defendant from its guarantee, because to do so would result in its unjust enrichment.
Actually, plaintiff's failure to send copies of invoices and statements to defendant covering its deliveries of building supplies to Chad-Mal did not affect defendant's rights or liability. Defendant demonstrates no damage or prejudice in consequence of its non-receipt of the duplicate invoices. It should be recalled that plaintiff began making deliveries to defendant's development on April 2, 1952, and continued thereafter until December 9, 1952, and yet defendant made no complaint whatsoever about not receiving duplicate invoices or statements from plaintiff until August 9. This conduct demonstrates the harmless and inconsequential nature of the non-receipt of the duplicates. We conclude that justice will not be done if we permit defendant to raise now the argument of the applicability of the New York statute. We refuse the requested exercise of our discretion under the original jurisdiction rule, R.R. 1:5-4. Defendant cannot escape its liability under the original guarantee by invoking the alleged validity of the so-called supplemental agreement.
Holding, as we do, that defendant is bound under its original guarantee of March 28, 1952, it could not have cancelled its obligation unilaterally by its letter of August 9, 1952.
Affirmed.