FRERICKS ET AL. *v.* GENERAL MOTORS
CORPORATION ET AL.

[No. 88, September Term, 1974.]

*Decided March 26, 1975.*

The cause was argued before MURPHY, C. J., and SMITH, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Leon J. Rudd,* with whom were *Wartzman, Rombro, Rudd & Omansky, P.A.* on the brief, for appellants.

*Edward S. Digges, Jr.,* with whom were *Joseph G. Finnerty, Jr.,* and *Frazer F. Hilder* on the brief, for General Motors Corporation, part of appellees. *George D. Solter,* with whom was *Leonard E. Wilson* on the brief, for Anchor Pontiac Buick, Inc., other appellee.

ELDRIDGE, J., delivered the opinion of the Court.

In this case questions relating to the liability of automobile manufacturers and dealers for alleged. design defects which cause or enhance injuries in so-called "second collisions," are once again presented to this Court. *See Volkswagen of America v. Young,* 272 Md. 201, 321 A. 2d 737 (1974).

On September 21, 1970, John Joseph Frericks was seriously injured when the car in which he was riding as a passenger left the road and overturned. The accident took place near Jacksonville, North Carolina, as Frericks and Ronald D. Baines, the driver of the car, were returning to Camp Lejeune in North Carolina. The car, a 1969 Opel Kadett 2-door sedan, had been purchased in Maryland on October 7, 1969, from Anchor Pontiac Buick, Inc., by Walter and Agnes Baines, parents of Ronald Baines.

On January 28, 1972, the petitioners, John Joseph Frericks and Frank Frericks, his father, filed suit in the Circuit Court for Cecil County, claiming damages as a result of the accident. Named as defendants were the driver, Ronald D. Baines, his parents, Walter D. Baines and Agnes Baines, the dealer who sold them the car, Anchor Pontiac Buick, Inc.,

and the manufacturer of the car, General Motors Corporation.

The circuit court (Roney, J.) sustained with leave to amend Anchor Pontiac Buick's and General Motors' demurrers to the original declaration. Petitioners then filed an amended declaration. What was termed "Case I" in the amended declaration was a claim against the Baineses grounded on Ronald Baines's alleged negligent driving. What was called "Case II" in the amended declaration set forth claims against General Motors and Anchor in four counts: negligence, breach of implied warranty, breach of express warranty, and strict liability in tort. Petitioners alleged in the amended declaration that, after leaving the highway,

> "the aforesaid vehicle rolled over on its roof causing the roof supports to collapse, bend, crumble and give way, unable to support the weight of the automobile, with the result that the roof itself bent, crumbled and gave way; that at the same time, when the vehicle overturned, the seat mechanism of seat in which the Plaintiff, JOHN FRERICKS was riding as a passenger, asleep, which was reclined at a five (5) degree angle, suddenly and without warning, failed and as a result thereof dropped rearward to an eighty (80) degree angle, with the result that the head of the Plaintiff was caused to be placed in a position in line with the collapsing roof supports and the collapsing roof on the right side of said vehicle, at which time a second impact occurred between the Plaintiff's head and the collapsing roof, crushing his skull and causing him to sustain the injuries hereinafter alleged."

In the first count, petitioners stated that respondent, General Motors, designed, manufactured, constructed and tested Buick Opel Kadetts and that respondent, Anchor Pontiac Buick, Inc., sold such vehicles to the public. Petitioners alleged that General Motors breached its duty to use care in the design of the Buick Opel Kadett by using

steel alloys of inadequate tensile strength in construction of the roof supports, by using steel alloys of insufficient strength and thickness in the seat tilting mechanism, and by inadequately testing these parts of the Opel Kadett. Petitioners further charged that General Motors and Anchor were negligent in failing to warn the petitioners of the alleged design defects in the Opel Kadett and failing to employ adequate means to recall such vehicles.

In the second count, petitioners stated that General Motors sold Opel Kadetts to Anchor which resold them to the public. They claimed that General Motors and Anchor both impliedly warranted that the Opel Kadett in which petitioner was injured would be suitable for its intended purpose, the provision of reasonably safe transportation. They alleged that both respondents breached the implied warranty by selling a car which was defectively designed in the manner set forth in the first count.

Petitioners, in the third count, alleged that General Motors and Anchor expressly warranted to petitioners that the Opel Kadett was designed to be reasonably fit for its intended purpose, and that both respondents breached the express warranty by selling the Opel Kadett which was defectively designed.

In the fourth count, petitioners claimed that the design defects described in the first count made the Opel Kadett unreasonably dangerous to petitioner, John Joseph Frericks, and that the sale of the car in such a defective state subjected the respondents to strict liability

General Motors and Anchor filed demurrers to the amended declaration. On October 3, 1972, the circuit court sustained the demurrers without leave to amend and filed an opinion explaining that in view of the facts which petitioners alleged, they had not stated any legal theory on which recovery could be based.

Following the circuit court's ruling of October 3, 1972, petitioners appealed to the Court of Special Appeals. That court dismissed the appeal as premature because the claim against the Baineses was still pending in the circuit court. *See* Maryland Rule 605 a; *Frericks v. Baines*, 16 Md. App.

343, 296 A. 2d 706 (1972). Thereafter, an order of satisfaction was filed with respect to the claim against the Baineses, and the petitioners then took a timely appeal to the Court of Special Appeals. The Court of Special Appeals, in a 2 - 1 decision, upheld the circuit court's action in sustaining the respondents' demurrers except with regard to the express warranty count. *Frericks v. General Motors Corp.*, 20 Md. App. 518, 317 A. 2d 494 (1974). The Court of Special Appeals allowed petitioners 60 days after remand to amend the express warranty count of the declaration by including allegations which could "authorize recovery under that theory."

The majority opinion in the Court of Special Appeals noted that a division of opinion existed on the issue of whether an automobile manufacturer should be liable for so-called design defects which produce enhanced injuries in an accident, but which are not the cause of the accident itself. The majority chose to follow the reasoning of *Evans v. General Motors Corp.*, 359 F. 2d 822 (7th Cir.), *cert. denied*, 385 U. S. 836, 87 S. Ct. 83, 17 L.Ed.2d 70 (1966), where the court declined to impose on an automobile manufacturer liability to an occupant of an automobile whose injuries were enhanced by a negligently designed part of the car although the defective part had not caused the original accident. The majority in the Court of Special Appeals rejected *Larsen v. General Motors Corp.*, 391 F. 2d 495 (8th Cir. 1968), where the court concluded that liability could be imposed where a design defect led to enhanced injuries in the "secondary impact" of an occupant with the interior of a car following an initial collision. Judge Lowe, in a dissenting opinion, urged that the *Larsen* holding be followed. *Frericks v. General Motors Corp., supra,* 20 Md. App. at 540.

The Court of Special Appeals decision in *Frericks* was filed before our recent decision in *Volkswagen of America v. Young, supra,* 272 Md. 201. Because of the importance of the issues involved, and the apparent inconsistency between the Court of Special Appeals' decision in this case and our decision in *Volkswagen of America v. Young,* we granted a writ of certiorari.

In *Volkswagen of America v. Young, supra,* we dealt with the question of a manufacturer's liability in negligence for a design defect which aggravates injuries received in an accident although the defect is not a cause of the accident. In *Young,* we followed the reasoning of *Larsen v. General Motors, supra,* and the cases following it, with regard to so-called "secondary impact" injuries caused by a negligent design. Our conclusion with respect to the negligence issue there involved was as follows (272 Md. at 216):

> "In sum, 'traditional rules of negligence' lead to the conclusion that an automobile manufacturer is liable for a defect in design which the manufacturer could have reasonably foreseen would cause or enhance injuries on impact, which is not patent or obvious to the user, and which in fact leads to or enhances the injuries in an automobile collision."

This Court rejected Volkswagen's argument that "the intended purpose of an automobile is transportation and does not include its participation in collisions" by stating that (*id.* at 217):

> "While the intended purpose of an automobile may not be to participate in collisions, the intended purpose includes providing a reasonable measure of safety when, inevitably, collisions do occur. For many years automobiles have been equipped with safety glass, bumpers, windshield wipers, etc. More recently, and largely as a result of governmental action, automobiles are equipped with additional safety devices such as seat belts, shoulder harnesses, padded dashboards, padded visors, non-protruding knobs, etc. Frequent collisions are foreseeable, and the intended purpose of all of these parts of the vehicle is to afford reasonable safety when those collisions occur."

We noted in *Young* that our holding did not require manufacturers to design and produce vehicles which would protect users from injury in all accidents (*ibid.*):

"The arguments that there is no duty to design 'accident-proof' or 'injury-proof' vehicles, and that automobile manufacturers are not insurers, are 'straw men.' No case has ever held that an automobile manufacturer must design an 'accident-proof' or 'injury-proof' vehicle or that the manufacturer is an insurer. Concerning two of the examples most often used by the advocates of non-liability for design defects, no one has suggested that an automobile must be designed to withstand a high speed head-on collision with a truck or to float if it leaves the road and goes into a body of water. As the court stated in *Larsen, supra,* 391 F. 2d at 502:

"'We do agree that under the present state of the art an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle or even one that floats on water, but such manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision.' "

In *Young,* the Court did not consider whether under Maryland law a cause of action for breach of warranty was set forth, since the law of the state where the car was purchased, Alabama, controlled that issue (*id.* at 220.) The Court also declined to apply the strict liability theory of *Restatement 2d, Torts,* § 402A, in a design defect situation (*ibid.*).

In the instant case, petitioners contend that the *Young* decision is controlling, and that under *Young* their declaration sets forth causes of action in all four counts against General Motors and Anchor. Respondents, on the other hand, argue: (1) that, since the accident occurred in North Carolina, the sufficiency of the negligence and strict liability counts of petitioners' declaration should be evaluated under North Carolina law, and that North

Carolina does not impose liability on manufacturers and dealers for "secondary impact" injuries caused by design defects; (2) that our holding in *Young* with respect to "secondary impact" injuries resulting from the negligent design of a car should not be extended to breach of warranty cases; and (3) that, even if *Volkswagen of America v. Young* is applicable to both, petitioners' declaration fails to state a cause of action either under a negligence or a breach of warranty theory.

## (1)

Respondents' initial argument is that *Volkswagen of America v. Young, supra,* is not applicable to the negligence issue because North Carolina law governs that issue in this case.,

The respondents correctly assert that the rule of *lex loci delictus* is applicable in tort actions brought in Maryland. *Harford Mut. Ins. Co. v. Bruchey,* 248 Md. 669, 674, 238 A. 2d 115 (1968); *White v. King,* 244 Md. 348, 355, 223 A. 2d 763 (1966). In this case, however, the respondents failed to give notice of their intent to rely on foreign law, when the case was before the trial court, as required by Maryland Code (1974), § 10-504 of the Courts and Judicial Proceedings Article.[1] That section contemplates that, if a party wishes to rely on foreign law, notice be given in the trial court so that the adverse party has an adequate opportunity to prepare his arguments on the foreign law.

The respondents are, in effect, asking us to take judicial notice of North Carolina law in spite of their failure to comply with § 10-504. Although we may in our discretion take judicial notice of foreign law where the statutory

---

1. Section 10-504 states:

"A party may also present to the trial court any admissible evidence of foreign laws, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken of it, reasonable notice shall be given to the adverse parties either in the pleadings or by other written notice."

Section 10-504 is a part of the Uniform Judicial Notice of Foreign Law Act which has been enacted in Maryland. Code, § 10-501-§ 10-507 of the Courts and Judicial Proceedings Article.

notification was not given and proof of the foreign law was not presented, *Harry L. Sheinman & Sons v. Scranton Life Ins. Co.*, 125 F. 2d 442, 444 (3d Cir. 1942); *M. N. Axinn Co. v. Gibraltar Development*, 45 N.J. Super. 523, 133 A. 2d 341, 347 (1957); *Litsinger Sign Co. v. American Sign Co.*, 11 Ohio St. 2d 1, 227 N.E.2d 609, 613-614 (1967), we decline to do so here because the case proceeded in the trial court and before the Court of Special Appeals on the assumption that Maryland law was applicable, and we granted certiorari on that basis. *See von Frank v. Hershey Nat'l Bank*, 269 Md. 138, 144, 306 A. 2d 207 (1973).

However, upon remand of this case to the circuit court, respondents will have an opportunity to give the notice required by § 10-504. That section allows notice to be given in the pleadings, and since respondents have yet to file their answer in this case, there obviously remains an opportunity for them to comply with § 10-504. If the circumstances indicate that no unfair surprise would result, notice of intent to rely on foreign law may be filed up to the start of trial. *See Morris v. Peace*, 14 Md. App. 681, 685-686, 288 A. 2d 600, *cert. denied*, 266 Md. 740 (1972).[2]

As respondents failed to give proper notice in the trial court of their intent to rely on North Carolina law, "we are not required to take judicial notice of the law of that state other than presume it is like that of Maryland." *Von Frank v. Hershey Nat'l Bank, supra*, 269 Md. at 144; *Coppage v. Resolute Insur. Co.*, 264 Md. 261, 269, 285 A. 2d 626 (1972); *Gebhard v. Gebhard*, 253 Md. 125, 128, 252 A. 2d 171 (1969); *Leatherbury v. Leatherbury*, 233 Md. 344, 348, 196 A. 2d 883 (1964).

Consequently, as to determining the sufficiency of the negligence count of petitioners' declaration at this stage of the case, the principles of *Volkswagen of America v. Young, supra*, are fully applicable.

---

2. Although no state court in North Carolina appears to have considered whether that state should follow *Evans* or *Larsen* with regard to liability for "secondary impact" injuries resulting from a defective design, a federal district court in that state has stated that it believed that the North Carolina courts would follow *Evans*. Alexander v. Seaboard Air Line R.R. Co., 346 F. Supp. 320, 327 (W.D. N.C. 1971).

The respondents also contended that North Carolina law should be applied to the strict liability count of petitioners' declaration. For the reasons set forth above, we presume North Carolina law to be the same as Maryland law with regard to the strict liability count.

This Court has not, as yet, either rejected or accepted the "strict liability" theory set forth in *Restatement 2d, Torts*, § 402A, in the type of case where that section might logically be applied. Petitioners argue that the present case is one in which the principles of § 402A should be held applicable. However, in *Volkswagen of America v. Young, supra*, we stated (272 Md. at 220-221):

> " . . . Regardless of whether the theory of § 402A of the *Restatement* should be accepted in other contexts, we are convinced that it has no proper application to liability for *design* defects in motor vehicles. The thrust of § 402A is that a seller of 'any product in a defective condition' is liable to a user for harm caused by that defective condition even though 'the seller has exercised all possible care in the preparation and sale of his product.' This principle obviously changes the standard of care with regard to a *construction defect*. But as to a defect in *design*, it has no special meaning. Since the existence of a defective design depends upon the reasonableness of the manufacturer's action, and depends upon the degree of care which he has exercised, it is wholly illogical to speak of a defective *design* even though the manufacturer has 'exercised all possible care' in the preparation of his product. While a few cases applying *Larsen* principles have used language of 'strict liability' with respect to design defects, it has been recognized that this results in 'no practical difference' from the application of negligence principles. Note, 24 Vanderbilt L. Rev. 862, 866-867 (1971); Sklaw, *'Second Collision' Liability: The Need For Uniformity*, 4 Seton Hall L. Rev. 499, 507, 522-523 (1973). . . ."

We adhere to what we said in *Young*, and decline to apply the "strict liability theory" of § 402A in a case where liability is dependent upon the existence of a defect in the design of an automobile.

(2)

Respondents' next contention is that our holding in *Young*, that a manufacturer is liable in negligence for "secondary impact" injuries caused by design defects, should not be extended to actions based on breach of warranty.[3] Petitioners alleged, in their declaration, that General Motors and Anchor breached their warranties that the automobile was fit for its "intended purpose" by selling a car which was not designed to provide reasonable protection to its occupants when accidents occurred.[4]

In *Volkswagen of America v. Young, supra,* we did not reach the issue of whether, under Maryland law, liability for "secondary impact" injuries caused by design defects could be based on breach of warranty. Since the automobile involved in *Young* had been purchased in Alabama, we held that Alabama law governed the breach of warranty claims. *Volkswagen of America v. Young, supra,* 272 Md. at 220.

---

3. Although petitioners alleged the breach of both implied and express warranties in their declaration, we treat the alleged warranties as one since, according to the declaration, both warranted the Opel Kadett as being suitable for its intended purpose, *i.e.,* the provision of reasonably safe transportation. Maryland Code, Art. 95B, § 2-314 creates an implied warranty from a seller who is a "merchant with respect to goods of that kind . . . [that the goods] [a]re fit for the ordinary purposes for which such goods are used . . . ." The alleged express warranty, given under Art. 95B, § 2-313 was, *according to* petitioners' declaration, that the car would be safe for its intended purpose.

4. In this case, there is no issue of privity. Maryland Code (1957, 1964 Repl. Vol., 1974 Cum. Supp.), Art. 95B, § 2-318, as amended effective three months before the sale of the vehicle in this case, provides that an express or implied warranty extends "to any natural person who is in the family or household of . . . [the seller's] buyer or who is a guest in his home or any other ultimate consumer or user of the goods or person affected thereby if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

Sec. 2-314 of the Code provides, in part: "Notwithstanding any other provisions of this subtitle, in §§ 2-314 through 2-318 of this subtitle, 'seller' shall include the manufacturer, distributor, dealer, wholesaler or other middleman, and/or the retailer . . . ."

In many of the cases in those jurisdictions imposing a duty upon automobile manufacturers to use reasonable care in the design of vehicles so as to provide a reasonable degree of safety when collisions occur, liability has been based only upon tort principles. In such cases, either the plaintiffs had not sought recovery on breach of warranty grounds (*e.g., Mickle v. Blackmon*, 252 S. C. 202, 166 S.E.2d 173, 178-179, 42 A.L.R.3d 525 (1969)), or the warranty claims presented privity problems (*e.g., Dyson v. General Motors Corporation*, 298 F. Supp. 1064, 1066 (E.D. Pa. 1969)), or the courts declined to rule on the warranty claims (*e.g., Larsen v. General Motors, supra*, 391 F. 2d at 506). However, we are aware of no case accepting respondents' contention that a manufacturer's duty to design vehicles to provide reasonable protection for the occupants when collisions occur, should be limited to causes of action sounding in tort and should not apply to claims based upon breach of warranty. Moreover, in those "second collision" cases where the plaintiffs had based their claims on both negligence and breach of warranty, where there were apparently no privity problems, and where the courts ruled on both claims, no distinction was made between the negligence and the warranty claims with regard to the applicable principles. *See, e.g., Bolm v. Triumph Corporation*, 33 N.Y.2d 151, 305 N.E.2d 769, 350 N.Y.S.2d 644 (1973); *Evancho v. Thiel*, 297 So. 2d 40, 44 (Fla. App. 1974); *Kelley v. Volkswagenwerk Aktiengesellschaft*, 110 N. H. 369, 268 A. 2d 837, 838-839 (1970).

The United States Court of Appeals for the Fourth Circuit stated in *Dreisonstok v. Volkswagenwerk A.G.*, 489 F. 2d 1066, 1068, n. 2 (4th Cir. 1974), with regard to application of liability for "secondary impact" injuries in design defect cases, "that it makes little or no real difference whether liability is asserted on grounds of negligence, warranty or strict liability; the applicable principles are roughly the same in any case." *See also Chestnut v. Ford Motor Co.*, 445 F. 2d 967, 968-969 (4th Cir. 1971); Harper & James, *Torts*, § 28.22 at 1584 (1956); [5] Prosser, *Torts*, § 103, at 671 (4th ed. 1971).

5. In cases which have rejected liability for "secondary impact" injuries

Respondents offer no logical reason for not applying the principles of *Volkswagen of America v. Young, supra,* to a claim based on breach of warranty. In fact, breach of warranty actions are normally viewed as requiring a less rigorous burden of proof than actions based on negligence, since in other contexts knowledge of the defect by the seller and lack of care on the part of the seller need not be alleged and proved where the action is grounded upon breach of warranty. Prosser, *supra,* § 95, at 636.

In claims based on an enhancement of injuries by a "secondary impact" caused by a design defect which did not cause the initial accident, the elements of a breach of warranty action are essentially the same as those of a negligence action. In an action sounding in negligence, we held that manufacturers have a duty to produce cars suitable for their intended use, and that the intended use or purpose of an automobile "includes providing a reasonable measure of safety when, inevitably, collisions do occur." *Volkswagen of America v. Young, supra,* 272 Md. at 210, 215, 217. Maryland Code Art. 95B, § 2-314, provides for an implied warranty that the goods "are fit for the ordinary purposes for which such goods are used." The applicable standards are the same. A warranty that an automobile is "fit for the ordinary purposes for which such goods are used" logically includes a promise that "a reasonable measure of safety" has been provided when inevitably collisions do occur.

We conclude that, for the purposes of evaluating the sufficiency of petitioners' breach of warranty allegations, the principles set forth in *Volkswagen of America v. Young, supra,* are controlling.

---

caused by design defects, allegations of a breach of warranty because of a design defect have been treated as presenting the same issue as allegations of negligence in producing a defectively designed car. Evans v. General Motors Corporation, *supra;* McClung v. Ford Motor Company, 333 F. Supp. 17, 20 (S.D. W.Va. 1971), *aff'd per curiam,* 472 F. 2d 240, *cert. denied,* 412 U. S. 940, 93 S. Ct. 2779, 37 L.Ed.2d 400 (1973); Willis v. Chrysler Corporation, 264 F. Supp. 1010, 1011 (S.D. Tex. 1967).

302

(3)

Finally, respondents argue that under the principles of *Volkswagen of America v. Young, supra,* the petitioners' declaration failed to set forth a cause of action in negligence or breach of warranty. In our view, however, the allegations were sufficient to state causes of action against the respondent General Motors Corporation in both negligence and breach of warranty and to state a cause of action against the respondent Anchor Pontiac Buick, Inc., for breach of warranty. On the other hand, we do not believe that the declaration stated a cause of action against Anchor in negligence.

The allegations of the declaration may be summarized as follows. Petitioners alleged that General Motors knew that overturning accidents resulting from negligent driving were a foreseeable result of the use of the Opel Kadett. They contended that the roof supports of the Opel Kadett were made of steel alloys of inadequate tensile strength and thickness. Petitioners further stated that the seat tilting mechanism and its locking device were made of steel alloys of insufficient strength and thickness which resulted in the development of excessive clearance between the gears of the locking mechanism. They further alleged that General Motors had failed to test these parts to be reasonably assured that their design would not cause or enhance injury when accidents occurred. Petitioners claimed that General Motors could have avoided these design defects by reasonable use of the knowledge and resources available to it. They stated that, when the Opel Kadett left the road and overturned, the seat tilting mechanism failed and dropped petitioner John Frericks rearward, causing his head to be placed in line with the roof supports. They alleged that the roof supports collapsed and struck John Frericks's head, inflicting serious injuries upon him. Finally, petitioners claimed that the injuries suffered by John Frericks as a result of the failure of the defectively designed parts were greater than those which he would have suffered from the overturn of the car alone.

These allegations are, on their face, sufficient to set forth a cause of action in negligence against General Motors under the principles of *Volkswagen of America v. Young.* Moreover, in light of the Maryland Uniform Commercial Code definition of "seller," [6] the allegations are sufficient to state a breach of warranty cause of action against both General Motors and Anchor.

At oral argument, respondents contended that we should take notice of certain facts not set forth in petitioners' declaration. Specifically, the respondents argued before us that the Opel Kadett is a small economy car, which cannot reasonably be expected to withstand the great force which it sustained when it overturned. Respondents also stated that the car rolled into a ditch when it overturned, subjecting the roof to an exceptional impact. These allegations, and supporting evidence, may be presented to the circuit court upon remand. In this appeal we may consider only the allegations set forth in petitioners' declaration. *Hall v. Barlow Corporation,* 255 Md. 28, 42, 255 A. 2d 873 (1969); *Brack v. Evans,* 230 Md. 548, 551, 187 A. 2d 880 (1963).

Respondents further contend that the allegations contained in petitioners' declaration that the Opel Kadett had been operated by the driver, Ronald D. Baines, "at an excessive and unlawful rate of speed under the circumstances then and there existing causing said vehicle to run off the road to the right side and to overturn" requires a holding by this Court that the petitioners did not state a valid claim in their declaration. These facts might be relevant with respect to the reasonableness of the design of the car to protect the petitioner, John Frericks, in the accident here involved. We cannot conclude, however, from the bare facts contained in petitioners' declaration, that the accident in this case was of such an unusual nature and severity that, as a matter of law, respondents had no duty to design the car to prevent injuries occurring as a result of a "secondary impact" in the accident.

Our decision in *Volkswagen of America v. Young* was

---

6. Code (1957, 1964 Repl. Vol., 1974 Cum. Supp.), Art. 95B, § 2-314.

premised on the fact that accidents inevitably occur and that manufacturers have a duty to provide a reasonable measure of safety in the design of automobiles to meet this risk. Manufacturers also know that some of these accidents will be the result of speeding or other acts of negligent driving. The fact that a negligent driver may be the initial cause of an accident does not abrogate the manufacturer's duty to use reasonable care in designing an automobile to reduce the risk of "secondary impact" injuries. The driver of the car may, in such cases, be prevented from recovering by his own contributory negligence, at least where his cause of action sounds in negligence.[7] But the manufacturer is liable for injuries caused or enhanced by his lack of care in designing the automobile, when those injured have not been negligent in any way.

In one respect, however, petitioners' declaration was properly held to be insufficient. In our view, the allegations did not state a cause of action in negligence against Anchor. Where recovery for injuries resulting from a defective product is premised upon negligence, a manufacturer or a dealer is liable only if he knew of or could have by reasonable care discovered the defect. *Babylon v. Scruton*, 215 Md. 299, 303, 138 A. 2d 375 (1958); *Telak v. Maszczenski*, 248 Md. 476, 485-486, 237 A. 2d 434 (1968). This Court in *Woolley v. Uebelhor*, 239 Md. 318, 325, 211 A. 2d 302 (1965), defined the duty owed by a dealer to a consumer where a defect attributable to the manufacturer is alleged:

> "A vendor of a chattel which another has manufactured who sells it knowing that it is or is likely to be dangerous has the liability of a manufacturer if the dangerous condition causes the chattel to cause harm, Restatement, Torts Sec. 399, and such a vendor, like a manufacturer, is subject to liability if, although ignorant of the dangerous character or condition, he could have by the exercise of reasonable care discovered it by utilizing

---

7. As to the applicability of the defense of contributory negligence in an action based on breach of implied warranty, *see* Erdman v. Johnson Brothers, 260 Md. 190, 196-204, 271 A. 2d 744 (1970).

the peculiar opportunity and competence which he has or should have as a dealer in such chattels. Restatement, Torts Sec. 402."

Where a *design* defect is alleged, a manufacturer who designed the product obviously would have knowledge of the defect, since the design of the product is an intentional act on the manufacturer's part. Therefore, an allegation that a manufacturer was negligent in the design of an automobile may state a valid cause of action in negligence without the necessity of a specific allegation that the manufacturer knew or should have known of the defect. But the dealer is in an entirely different position. The dealer who had nothing to do with the design of the car cannot be presumed to know of the defective design. Dealers cannot be expected to duplicate the engineering and planning resources available to giant automobile manufacturers for the purpose of ascertaining that every model of car they sell is designed without negligence. As stated in L. Frumer & M. Friedman, *Products Liability*, § 18.04 (1974):

> "Design negligence ... is particularly an area in which it seems difficult ordinarily to find any logical basis for imposing liability upon the retailer in negligence, because design certainly in most instances involves questions of specialized knowledge which the retailer cannot be expected to have."

If a dealer knows that a particular part of a car is defectively designed, or if in the exercise of reasonable care he should have known of or discovered the defective design, he has the same liability in negligence as the manufacturer. *Woolley v. Uebelhor, supra.* But since it cannot be presumed from the mere existence of the defective design that the dealer had or should have had the requisite knowledge, it is necessary that such knowledge be specifically alleged. In this case, there were no specific allegations that Anchor knew of, or could have by the exercise of reasonable care discovered, the alleged defects in the Opel Kadett. Therefore, petitioners

failed to state a cause of action against Anchor in negligence.

In sum, we hold that under Maryland law petitioners' declaration stated causes of action against respondent General Motors in negligence and breach of warranty and stated a cause of action against respondent Anchor for breach of warranty.

> *Judgment of the Court of Special Appeals vacated, and the case is remanded to that Court with instructions to reverse the judgments of the Circuit Court and remand the case to the Circuit Court for proceedings in conformance with this opinion.*
> *Respondents to pay costs.*