Keating, J.
John Rooney was an engineer employed by the Bureau of Sewage Disposal of the Department of Public Works of the City of New York. On October 2, 1957, Rooney and another employee descended into a sewer in Queens County to ascertain the source of certain water in a bulkhead. Before entering the sewer, Rooney and the other employee, Fattore, put on gas masks and tested them. Booney’s mask was manufactured by Mine Safety Appliances Co., the defendant-respondent. The two men descended into the sewer, donned the facepieces of their masks and proceeded to the point where the valve was located. Booney turned it off.
On the way out, Rooney collapsed. He died of asphyxiation.
On a cause of action for breach of implied warranty of merchantability, the jury rendered a verdict for the plaintiff administratrix against the defendant manufacturer in the amount of $55,000. The Appellate Division reversed and dismissed the complaint on the ground that the plaintiff had failed to make out a prima facie case.
It is true that there is no evidence in this case regarding precisely how the accident happened, since Fattore was leading the way out of the sewer and Booney was behind him. The defendant manufacturer thus claims that there is no evidence that Booney was wearing the gas mask when he died.
Although we are of the opinion that this issue was for the jury to decide and they could properly presume the continuance of the condition, wearing the mask, this factor is not determina *45 tive of the plaintiff’s ease. If the mask were working efficiently, it would have been gross negligence, bordering on the intentional, for Rooney to have pulled it off.* If the mask were not working properly, its malfunctioning would have been the cause of Rooney’s death, regardless of whether he pulled it off because he could not breathe or kept it on and thereby became asphyxiated. The sewer was apparently filled with hydrogen sulphide, a poisonous gas.
It has been contended that perhaps Eooney failed to press the plunger. The plunger on this gas mask, when pushed, would cause a disc attached to it to move away from six small holes in the facepiece of the mask and permit any excess pressure to be relieved through the holes. Either failure of the wearer to press the plunger or failure of the plunger to work would cause asphyxiation. Plaintiff’s expert thus testified:
‘1 In the absence of the ability to relieve the pressure, so that one may exhale, there is an immediate lack of oxygen * * * which is vital. ”
Rooney had been fully instructed, several months prior to the accident, in the use and operation of the mask. If Rooney, while exiting from the sewer, neglected to press the plunger, and continued to fail to do so, even as the pressure built up, he would have been extraordinarily negligent. We stated in Chamberlain v. Lehigh Val. R. R. Co. (238 N. Y. 233, 235):
“ [We] have held that if any possible hypothesis based on the evidence forbids the imputation of fault to the deceased, as matter of law, the question is for the jury. ”
The possibilities which present themselves are either:
(1) Eooney intentionally and suicidally pulled off a well-functioning mask or
(2) he recklessly pulled off a properly functioning mask or
(3) he grossly negligently failed to press the plunger or
(4) the mask did not work and Eooney either became asphyxiated with the mask on or pulled it off at some point and was asphyxiated by the gas in the sewer.
It was proper for the jury to infer that the fourth possibility was what, in fact, occurred, viz., that the mask did not work.
*46 The other possibilities involving, as they do, nothing short of gross negligence, are inherently remote. Accordingly, under the circumstances of this case, it was proper for the jury to infer that the mask which Rooney wore malfunctioned.
The plaintiff’s expert attempted to explain why the mask had not worked. He was of the opinion that the plunger was improperly designed. He stated: “My most serious objection is the fact that it protrudes and is subject to damage. It can be hit and knocked sideways; or, secondly * * * it is possible that this can become loose, unsuspectingly, would fall out, and therefore would not be available to perform the important function of relieving pressure within the system.”
When Rooney’s mask was examined by the Bureau of Mines, it was found to be missing the plunger. The custody of the mask from the time of the accident to the time of the examination was shown, except for a period of about an hour during which it lay on the pavement near the sewer opening. There were people milling about. The defendant contends that the plunger could have been knocked off during this time by one of the onlookers. On the other hand, the plaintiff showed that the hole where the plunger should have been was clogged with red clay and that there was no red clay on the pavement where the mask had lain. This factor supports an inference that the plunger came out in the sewer and there became clogged with the red clay.
We are, thus, of the opinion that the evidence supports a jury finding that the mask did not work because the plunger was defective.
Although the Appellate Division reversed only on the ground that the plaintiff had failed to make cut a prima facie case, the defendant raises the issue that this is not a proper case for breach of warranty, since the S. A. Healy Co. sold the mask to New York City as a used product.
Inasmuch as the city tested the mask and found it to be working properly and the defect, claimed and supported by the evidence, was in design, the fact that the mask was used, prior to its being bought by the city, should not prevent a recovery in this action. As we stated in Goldberg v. Kollsman Instrument Corp. (12 N Y 2d 432, 436): “ A breach of warranty, it is now clear, is not only a violation of the sales contract out of which *47 the warranty arises but is a tortious wrong suable by a noncontracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer. ’ ’
In Goldberg (supra) we spoke of casting liability upon the manufacturer who put the product into the market. Since the defendant put into the market a mask, claimed to be defectively designed, it must be responsible for accidents to foreseeable plaintiffs resulting from such a defect, regardless of the chain of buyers. Of course, if the defect were unaccounted for, or one which could have arisen through the fault of prior users, this rule would not be applicable. In this case, since the defect was one in design, the action for breach of warranty is proper even though the mask was a used one.
The order of the Appellate Division should be reversed and, since the findings of fact implicit in the verdict were affirmed below, it should be reinstated.
Chief Judge Fuld and Judges Burke and Breitel concur with Judge Keating; Judges Van Voorhis, Scileppi and Bergan dissent and vote to affirm upon the opinion at the Appellate Division.
Order of Appellate Division reversed and judgment of Supreme Court, Richmond County, reinstated, with costs in this court and in the Appellate Division.

 In Garrow v. State of New York (268 App. Div. 534, 537, affd. 294 N. Y. 741) the court, in directing judgment for the claimant, stated the settled rule: “ The law presumes that she did not intentionally take her own life.”