Rosser F. ALEXANDER, Plaintiff,

v.

SEABOARD AIR LINE RAILROAD COMPANY, a corporation, et al., Defendants.

Civ. A. No. 2258.

United States District Court, W. D. North Carolina, Charlotte Division.

Aug. 19, 1971.

James L. Cole, Cole & Chesson, Charlotte, N. C., Paul D. Rheingold, Speiser, Shumate, Geoghan, Krause & Rheingold, New York City, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., for plaintiff.

Thomas R. Eller, Jr., Cansler, Lockhart & Eller, Charlotte, N. C., for defendant, Seaboard Air Line Railroad Co.

H. C. Hewson, Jones, Hewson & Woolard, Charlotte, N. C., for defendants, Volkswagenwerk Aktiengesel-Schaft, and Volkswagen of America, Inc.

J. J. Wade, Jr., Wardlow, Knox, Caudle & Wade, Charlotte, N. C., for defendant, Capitol Car Distributors, Inc.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

This matter is before the court upon a Motion for Summary Judgment filed by the defendants, Volkswagenwerk Aktiengesel-Schaft, a corporation (VWAG), and Volkswagen of America, Inc., a corporation (VWOA).

After careful consideration of the pleadings, depositions, answers to interrogatories, affidavits, briefs and argument of counsel, the court enters its findings and conclusions in this Memorandum of Decision.

The original action was instituted by plaintiff on June 30, 1967, for the recovery of monetary damages for personal injuries alleged to have been caused by the negligence of the defendant, Seaboard Air Line Railroad Company (Railroad), resulting from a collision between plaintiff's Volkswagen automobile and a moving freight train. On July 9, 1968, more than one year later, plaintiff filed a Four-Count Amended Complaint against the Railroad, and three additional defendants, VWAG, VWOA, and Capitol Car Distributors, Inc., (Capitol). Count I contains allegations of negligence against Railroad only, while in Count II allegations are made against VWAG, VWOA, and Capitol of negligence in the design, testing, manufacture, construction, assembly, sale and marketing of the Volkswagen automobile in which plaintiff was injured. Count III sets forth allegations against VWAG, VWOA, and Capitol of breach of implied warranty and strict liability, and Count IV charges VWAG, VWOA, and Capitol with intentional or careless misrepresentations. Immediately prior to oral argument on the Motion for Summary Judgment, plaintiff announced he desired to take a dismissal as to the defendant Capitol, and that he would abandon the alleged causes of action in Counts III and IV, leaving only Count I against the Railroad, which is not involved in this Motion, and Count II against VWAG and VWOA.

On the night of February 6, 1967, plaintiff was operating his 1965 Model Volkswagen sedan automobile in a Northerly direction on North Carolina Rural Paved Road #1377 when he collided with Railroad's 114-ton locomotive engine pulling twenty-two freight cars and traveling East. The collision occurred at Stout's Crossing in Union County where Road #1377 crosses Railroad's tracks at approximate right angles. The Volkswagen automobile struck the engine on its right side about eighteen feet from the front end,

and immediately after the impact the car burst into flames. The plaintiff and Railroad's engineer are the only eye witnesses to the collision. Both have been deposed and the plaintiff estimates the speed of his automobile at the moment of impact to be from five to ten miles per hour, and the engineer places the speed of the train at forty-five miles per hour. The automobile was sold to a junk yard and crushed shortly after the collision and no one is known to have any of its parts and the locomotive engine has been examined from stem to stern. So, it seems that all available facts are now known and are before the court.

While the plaintiff alleges negligence of design, construction, manufacture, assembly, etc., of the 1965 Model Volkswagen automobile, he admits in his brief that his claim is based upon negligent design only. On Page 4 of plaintiff's brief there appears the following:

"We concede that we make no claim that there was a defect in the VW which caused it to hit the train. We concede that all of our allegations about the defectiveness of the VW relate to it post-collision. And we concede that our claim in the Second Cause of Action is that there was a defective design, not construction, of the Alexander VW, and all those like it. It is plaintiff's contention that with reasonable care under the standards then existing for automotive manufacturers in 1966, a vehicle should not have been designed with a gas cap that could fly off in a collision, with a tank that would deform, with a front end that allowed crushing of the tank, with an improper separation of the trunk from the passenger compartment, and with a flammable interior. All of these allegations are what are commonly grouped under the concept of the 'safe interior,' the 'second collision,' or 'crashworthiness.' "

The plaintiff therefore contends, in effect, that because of the negligence in design, he received injuries he would not have otherwise received or, in the alternative, his injuries would not have been as serious. He does not contend nor allege that any of these defects in design caused or contributed to the collision.

■ There is no genuinie issue or dispute as to any material or salient fact insofar as this Motion is concerned. The question to be determined is: What duty does an automobile manufacturer owe a user of its product under the facts of this case? Plaintiff's alleged causes of action against the defendants, VWAG and VWOA, will stand or fall upon the answer to this question. This court holds that it is a question of law for the court and that summary judgment is now appropriate.

The two leading federal court decisions on this issue hold that the question is one of law for the court. In Evans v. General Motors Corp., 359 F.2d 822 at 824 (7th Cir. 1966), cert. den. 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70, the court said:

"The major question before us is the nature of the duty which an automobile manufacturer owes to users of its product. This presents an issue of law for the Court."

In Larsen v. General Motors Corp., 391 F.2d 495, at 498 (8th Cir. 1968), the court held:

"Both parties agree that the question of a manufacturer's duty in the design of an automobile or of any chattel is a question of law for the court. The decisional law is in accord."

The Fourth Circuit said in Bland v. Norfolk and Southern Rail Road Co., 406 F.2d 863 (4th Cir. 1969):

"Summary judgment is to avoid a useless trial; it is a device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts."

This case is here by reason of diversity of citizenship, and the answer to the question involved must be found under

North Carolina law. A careful search reveals no North Carolina Supreme Court decision on this exact point. The plaintiff admits that this is a case of first impression in this State but contends that this court should find that the North Carolina Court "would today adopt the rule that a manufacturer must with reasonable care design his vehicle to make it safe to have an accident in (a duty of making a vehicle 'crashworthy' to use a convenient shorthand)."

■ An examination of North Carolina decisions reveals that the law imposes upon the manufacturer of an automobile the duty to use reasonable care in its manufacture and to make reasonable inspection of the construction in the plant where the vehicle is made. In Gwyn v. Lucky City Motors, Inc., 252 N.C. 123, 113 S.E.2d 302, the court followed the rule laid down in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, and the fourth circuit case of General Motors Corp. v. Johnson, 137 F. 2d 320, which applied West Virginia law, when it quoted and approved the following from *Johnson*:

> "The overwhelming weight of authority is to the effect that the manufacturer of a truck, like the one here in question, owes a duty to the public, irrespective of contract, to use reasonable care in its manufacture and to make reasonable inspection of the construction in the plant where the truck was manufactured."

■ The North Carolina rule to measure a manufacturer's responsibility for his products has been declared in numerous cases. He is not an insurer but his obligation to those who use his product is tested by the law of negligence. He must operate with that degree of care which a reasonably prudent person would use in similar circumstances. The court has held that *reasonable care* must be used in designing the article or product, Swaney v. Peden Steel Co., 259 N.C. 531, 131 S.E.2d 601; in selecting proper materials with which to make the article or product,

Wilson v. Lowe's Asheboro Hardware, Inc., 259 N.C. 660, 131 S.E.2d 501; and in inspection of products for hidden defects, Gwyn v. Lucky City Motors, Inc., *supra*; DuPree v. Batts, 276 N.C. 68, 170 S.E.2d 918.

■ While it is clear the North Carolina rule imposes liability upon a manufacturer for negligence in design which *causes the accident,* there is no case in which the court has extended the rule to allow recovery where the negligent design of the product *did not cause the accident* but only increased or aggravated the damages. In fact, very few jurisdictions have extended the rule that far. The leading case for this theory— Larsen v. General Motors Corporation, *supra,*—and upon which the plaintiff relies, holds that a manufacturer's duty is to design and construct an automobile that is reasonably fit for its intended use and free from hidden defects that could render it unsafe for such use, and extends the "intended use" doctrine to include injury producing collisions. *Larsen* goes further and holds that "no rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called 'second collision' of the passenger with the interior part of the automobile, all are foreseeable." The *Larsen* court then approved the possible apportionment of damages when it said: "Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." The court answered the argument of such damages being difficult to assess by citing as an example the comparative negligence statutes in effect in some jurisdictions.

Additional cases cited and relied upon by the plaintiff which apparently follow the Larsen theory are: Mickle v. Blackmon, 252 S.C. 202, 166 S.E.2d 173 (1969); Dyson v. General Motors Corp., 298 F.Supp. 1064 (E.D.Pa.1969); and Grundmanis v. British Motor Corporation, 308 F.Supp. 303 (E.D.Wis.1970).

The defendants cite and rely upon the leading case of Evans v. General Motors Corp., *supra,* which applied Indiana law and which followed the rule laid down in the New York case of Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950). The *Evans* case involved an action for wrongful death alleged to have been caused by the negligence of General Motors in designing and manufacturing a 1961 Chevrolet station wagon with an X frame rather than a perimeter frame. The plaintiff alleged that his decedent was driving across an intersection when the station wagon was struck from the left side by another automobile and that the left side of the station wagon collapsed in upon the decedent, inflicting fatal injuries. The plaintiff contended that a perimeter frame is safer and it was negligence to design an automobile with an X frame. His theory of the case was that the collision which occurred was a foreseeable emergency and that by omitting side frame rails, defendant created an unreasonable risk of harm to occupants of the automobile it manufactured. The plaintiff did not allege or contend that defendant's design could have functioned to avoid the collision. The District Court dismissed the action and the Seventh Circuit affirmed, holding:

"A manufacturer is not under a duty to make his automobile accident proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all. Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802, 804. Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law. Campo v. Scofield, *supra,* 805."

\* \* \* \* \* \*

"The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur. As defendant argues, the defendant also knows that its automobiles may be driven into bodies of water, but it is not suggested that defendant has a duty to equip them with pontoons.

"We cannot agree with the plaintiff that the defendant had a duty to equip all of its automobile with side rail perimeter frames, or that such a duty can be inferred from the mere fact that some of the defendant's, or some of its competitors', automobiles are now made with side rails, or from the opinions of certain experts that perimeter frames are 'safer' in a collision. Defendant had a duty to test its frame only to ensure that it was reasonably fit for its intended purpose."

New York continues to follow Campo v. Scofield, and *Evans.* Apparently the latest case on the subject from New York is Edgar v. Nachman, 37 A.D.2d 86, 323 N.Y.S.2d 53, opinion filed June 28, 1971. The *Edgar* case involves facts strikingly similar to the case at bar. Plaintiff's decedent, while operating a Volkswagen automobile, was involved in a head-on collision with another vehicle and immediaely after impact the Volkswagen burst into flames causing or contributing to decedent's injuries and death. The allegations of negligence included the location of the gasoline tank in the front portion of the automobile, and that the gasoline cap flew off as a result of the impact. The court held that:

"The duty of the manufacturer of a machine which is inherently dangerous because of the way it functions is to make it free from latent defects or concealed dangers not known to the plaintiff. (MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050.)

The appellant would have us extend this rule, which governs the care required in construction, and impose liability on manufacturers for injury resulting from automobile design deficiencies.

"There have been cases where liability has been imposed upon a manufacturer for improper design which caused the accident (Rooney v. S. A. Healy Co., 20 N.Y.2d 42, 281 N.Y.S.2d 321, 228 N.E.2d 383; Carpini v. Pittsburg & Weirton Bus Co., 3 Cir., 216 F.2d 404), and a few jurisdictions have allowed recovery where the design of the car did not cause the accident but increased or aggravated the injury (cf. Larsen v. General Motors Corp., 8 Cir., 391 F.2d 495 and cases cited therein; contra, Evans v. General Motors Corp., 7 Cir., 359 F.2d 822, cert. den. 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70), but no decisions in this state are called to our attention which allow recovery against the manufacturer for unsafe design characteristics which do not cause the accident but only aggravate the damages.

"The New York rule is stated in Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802. Liability may not be imposed on a manufacturer solely because his product is dangerous to use and he has failed to make safety provision against all anticipated risks. If the manufacturer does everything necessary to make the product function properly for its intended purpose, and its operation creates no danger unknown to the user, then the manufacturer is not liable. He is not required to make a machine that is accident proof or a car that is crashworthy. Appellant's attempt to fix liability on respondents, as stated in her proposed amended complaint, because the gas cap flew off as the result of impact and the gasoline tank was located in front of the vehicle do not spell out causes of action based on either negligence or warranty. (Campo v. Scofield, supra; Inman v. Binghamton Housing Authority, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895) * *."

In Shumard v. General Motors Corporation, 270 F.Supp. 311 (S.D.Ohio 1967), the court granted summary judgment for the defendant upon facts quite similar to the case at bar. Plaintiff's decedent was killed while riding in a 1962 Corvair which burst into flames immediately after a head-on collision with another vehicle. There were allegations of negligence in design and location of the gas tank. The court applied Ohio law and cited Campo v. Scofield, and Evans, in holding:

"An automobile manufacturer cannot construct a fireproof vehicle unless it forsakes the use of any and all combustible materials. The impracticality and unreasonableness of this suggestion is obvious. No duty exists to make an automobile fireproof, nor does a manufacturer have to make a product which is 'accident-proof' or 'foolproof'. Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950); Blissenbach v. Yanko, 90 Ohio App. 557, 107 N.E.2d 409 (1951)."

\* \* \* \* \* \*

"The purpose for which a product is manufactured has reference to its normal and proper use and not to any use.

"These cases conclusively demonstrate that an automobile is not made for the purpose of striking or being struck by other vehicles or objects and that the duty of an automobile manufacturer does not include the duty to design and construct an automobile which will insure the occupants against injury no matter how it may be misused or bludgeoned by outside forces."

In the recent case of General Motors Corp. v. Howard, 244 So.2d 726, 1971, the Supreme Court of Mississippi rejected the Larsen rule, and held:

"The proof is conclusive that the steering wheel and column assembly played no part whatsoever in the cause of this collision. We have rejected

the rule as announced in Larsen v. General Motors Corporation, *supra*, and Mickle v. Blackmon [Products Liability Reports § 6132], 252 S.C. 202, 166 S.E.2d 173 (1969). The decisions in Walton v. Chrysler Motor Corporation, *supra* [229 So.2d 568 (Miss. 1969)], and Ford Motor Company v. Simpson, *supra* [233 So.2d 797 (Miss. 1970)], are controlling here."

The court quoted with approval the following from *Walton:*

"Although it is true that the manufacturer is liable for defects in its products which cause injury arising out of the intended use for which the product is manufactured—we are, nevertheless, of the opinion, and so hold, that an automobile manufacturer is not liable for injury arising from defects on the automobile which did not cause or contribute to the cause of the accident, such as rear end collisions. This is true although such accident may have been foreseeable as a misuse of the manufactured product. 229 So.2d at 572." (Emphasis added.)

The defendants cited these additional cases which reject the *Larsen* rule: Willis v. Chrysler Motor Corp., 264 F. Supp. 1010 (S.D.Texas 1967); Schemel v. General Motors Corp., 261 F.Supp. 134 (S.D.Indiana 1966), affirmed 384 F. 2d 802 (7th Cir. 1967); Burnet v. General Motors Corp., an unreported federal district court decision in New Jersey; and Enders v. Volkswagenwerk, CCH Prod.Liab.Rep. Par. 5930, at Page 8312 (Wis. Circuit Court decision, February 22, 1968.)

While the North Carolina Supreme Court has not ruled on this exact point in an automobile case, it nevertheless has spoken in several products liability cases which direct us to the law in this case. In Kientz v. Carlton and Sears & Roebuck, 245 N.C. 236, 96 S.E.2d 14, the court considered the question of negligence in the design and construction of a power rotary lawn mower. The plaintiff, whose left foot had been severely cut when it came in contact with the rotary blade, alleged that the mower was inherently dangerous because it was not equipped with specific safety features, alleged to be approved and in general use and which could have been provided at small expense, to-wit: (1) a control at the handle bars to enable the operator to stop the motor and blades without going to the front of machine; (2) a safety clutch within reach of the operator; (3) a rear guard from frame to ground; (4) a guard from blade to rear of casing; and (5) the motor should have been at the rear instead of center of casing. The evidence disclosed that both the construction and operation of the mower were simple, readily observed, and understood upon casual inspection. There was no evidence of defective materials or construction. It was in fact what it purported to be, a low priced, small, light weight, power mower. It was suitable to mow ordinary lawns and there was no evidence that it was intended to be used for any other purpose. The court held:

"To recover damages for actionable negligence, plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach."

\* \* \* \* \* \*

"In our opinion the evidence is insufficient to support a finding that this mower was an inherently dangerous instrumentality and that Sears should have reasonably foreseen that injurious consequences were probable if operated by a person who was not himself at fault."

It is interesting to note that the court in the *Kientz* case cited and relied upon the New York case of Campo v. Scofield, *supra*, when it said:

"The absence of the several alleged safety features was obvious, not latent. Injury alleged to have occurred because of the absence of a guard or stopping device on an 'onion topping' machine was involved in Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802, 803. The basis of decision, supported by the authorities cited, is epit-

omized in these excerpts from the opinion of Judge Fuld: 'The cases establish that the manufacturer of a machine or any other article, dangerous because of the way in which it functions, and patently so, owes to those who use it a duty merely to make it free from latent defects and concealed dangers.' Again: '. . . since the duty owed by a manufacturer to remote users does not require him to guard against hazards apparent to the casual observer or to protect against injuries resulting from the user's own patently careless and improvident conduct, the complaint was properly dismissed.' "

\*    \*    \*    \*    \*    \*

"Even if there were a breach of legal duty, this would impose 'responsibility for consequences which are probable, and which could reasonably have been foreseen, according to ordinary and usual experience, but not for consequences which are merely possible according to occasional experience.' Brady v. Southern R. R., 222 N.C. 367, 373, 23 S.E.2d 334."

In the recent case of Corprew v. Geigy Chemical Corp., 271 N.C. 485, 157 S.E.2d 98, where the general rule of non-liability of a manufacturer for negligence because of lack of privity of contract was abandoned, the court quoted with approval the following from 65 C. J.S. Negligence § 100(3) at 1101–02:

"Although a manufacturer is under a duty to foresee the probable results of normal use of the product manufactured, he does not have to foresee, and is not responsible for, the results of a use which departs from the normal, or could not reasonably have been foreseen or anticipated, or is in violation of an ordinance."

If we abandon the time honored and well established interpretations of proximate cause and embrace the *Larsen* rule which includes the extension of the "intended use" doctrine to injury producing collisions, a flood of questions immediately arise. Are all collisions included? Must the manufacturer be required to reasonably foresee only head-on or rear-end collisions with other vehicles on the highway and which occur within the speed limits? Would collisions with trees, boulders, buildings or other stationary objects off the right of way be included? Must he foresee and design a vehicle to withstand a collision with a 114-ton locomotive engine pulling a freight train traveling at 45 miles per hour? Must the gas tank be in front or in the rear? Can a fire-proof and crash-proof automobile be designed as long as gasoline is the fuel to be used? Must automobiles become tank-like vehicles? *Larsen* recognized that there is no duty or burden upon the manufacturer as yet to design an automobile that floats upon the water. If the vehicle must be "crashworthy", then why not include safety on the water? These questions point up the problems which arise when the courts depart from the well-traveled paths and open up Pandora's Box.

The slaughter on the highways of America is indeed an appalling problem and the Congress and the legislatures of the various states are now concerned. There are no simple answers, but if the American people are to travel in Sherman tanks, the Congress, and not the courts, should decree it.

This court rejects the *Larsen* rule, and declares that while a manufacturer is liable for defects in its products which cause injuries arising out of the "intended use" for which the product is manufactured, it is not liable for injuries arising from defects of the automobile which did not cause or contribute to the cause of the accident. The "intended use" of the Volkswagen automobile did not include its participation in a collision with a 114-ton locomotive engine traveling at the rate of 45 miles per hour.

The court is therefore of the opinion that the defendants' Motion for Summary Judgment should be allowed. An appropriate Order will be entered simultaneously herewith.