FRERICKS ET AL. *v.* GENERAL MOTORS
CORPORATION ET AL.

[No. 169, September Term, 1975.]

*Decided September 17, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, LEVINE and ELDRIDGE, JJ.

*Leon J. Rudd,* with whom were *Wartzman, Rombro, Rudd & Omansky, P.A.,* and *Gilbert R. Giordano* and *Giordano, Alexander, Haas, Mahoney & Bush* on the brief, for appellants.

*Edward S. Digges, Jr.,* and *Francis B. Burch, Jr.,* with whom were *Joseph G. Finnerty, Jr., Doris P. Scott* and *Frazer F. Hilder* on the brief, for General Motors Corporation, part of appellees. *George D. Solter,* with whom was *Leonard E. Wilson* on the brief, for Anchor Pontiac Buick, Inc., other appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This case was first before us in *Frericks v. General Motors Corp.,* 274 Md. 288, 336 A. 2d 118 (1975). Briefly the facts are

as follows. On September 21, 1970, John Frericks was a passenger in a 1969 Opel Kadett which was being driven by Ronald B. Baines. Near Jacksonville, North Carolina, Baines apparently fell asleep at the wheel, and the car left the road and overturned. It was alleged that after leaving the highway, the locking mechanism of the seat in which John Frericks was riding failed, allowing the seat to drop backwards and placing his head "in a position in line with the collapsing roof supports and the collapsing roof on the right side of the vehicle." His skull was crushed by the collapsing roof and roof supports. The automobile was designed and manufactured by the General Motors Corporation and was purchased in Maryland by the parents of Ronald Baines from Anchor Pontiac Buick, Inc.

Plaintiffs, John Frericks and his father, Frank Frericks, brought this suit in the Circuit Court for Cecil County against General Motors and Anchor alleging, *inter alia*, both negligence in the design, testing and selection of materials for the seat mechanism and roof of the automobile, as well as breach of implied and express warranties. General Motors and Anchor filed demurrers to the negligence and warranty counts which were sustained by the trial court, and its judgment was affirmed by the Court of Special Appeals. This Court, however, in *Frericks v. General Motors Corp., supra,* directed a reversal of the judgment of the circuit court insofar as it sustained the demurrer by General Motors as to both the negligence and warranty counts and the demurrer of Anchor as to the warranty counts, but we affirmed that part of the judgment sustaining Anchor's demurrer to the negligence count.

With regard to the negligence counts, we held in *Frericks v. General Motors Corp.* that while North Carolina law was applicable under the rule of *lex loci delictus*, neither General Motors nor Anchor had given notice of intent to rely on foreign law as required by Maryland Code (1974), § 10-504 of the Courts and Judicial Proceedings Article. Consequently, we declined to take judicial notice of the foreign law and, for the purpose of testing the sufficiency of the declaration, proceeded under the assumption that North

Carolina law was like that of Maryland. The Maryland law in this so-called "automobile crashworthiness" area had been delineated in *Volkswagen of America v. Young*, 272 Md. 201, 321 A. 2d 737 (1974), in which we agreed with the holding in the leading case of *Larsen v. General Motors Corporation*, 391 F. 2d 495 (8th Cir. 1968), that an automobile manufacturer may be liable in negligence for a design defect which aggravates injuries received in an accident even though the defect was not the cause of the accident itself. In *Frericks v. General Motors Corp.*, *supra*, we applied the principles of *Volkswagen of America v. Young*, *supra*, deciding that the negligence count did state a cause of action against General Motors but was insufficient as to Anchor because of the failure to allege any specific act of negligence on Anchor's part. General Motors, however, was to be permitted on remand of the case to the circuit court to give notice of intent to rely on foreign law and to raise the question of whether North Carolina imposes liability on manufacturers for "secondary impact" injuries caused by design defects. *Frericks v. General Motors Corp.*, *supra*, 274 Md. at 296-297.

The sufficiency of the breach of warranty counts, on the other hand, was evaluated in *Frericks* under Maryland law, as the law of the place of sale determines the extent and effect of the warranties which arise from the sale. *See Volkswagen of America v. Young*, *supra*, 272 Md. at 220. We held in *Frericks* that the standard of care to provide an automobile suitable for its intended use, including a reasonable measure of safety in the event of a collision, which is applicable in a tort action, was under the circumstances likewise the standard applicable in the action for breach of the warranties. Applying this standard, we decided that the warranty counts were sufficient to state a cause of action against both General Motors and Anchor. *Frericks v. General Motors Corp.*, *supra*, 274 Md. at 299-301.

On remand to the circuit court, General Motors filed general issue pleas to both the negligence and warranty counts of the declaration. General Motors also gave notice of intent to rely on North Carolina law. Anchor filed a general

issue plea to the warranty count. Both defendants then filed motions for summary judgment. General Motors contended that under North Carolina law the plaintiffs had failed to state a cause of action under the negligence count. As to the warranty counts, General Motors contended that the plaintiffs were barred from any remedy for breach of warranty by § 2-607 (3) (a) of the Maryland Uniform Commercial Code, Maryland Code (1975), § 2-607 (3) (a) of the Commercial Law Article, for failing to give notice of the breach. Anchor also based its motion upon the plaintiffs' failure to notify it of the alleged breach. It is undisputed that neither plaintiff notified General Motors or Anchor of any breach until the original suit was filed.

The trial court granted both motions for summary judgment. The court held that a third party beneficiary of warranties is to be treated as a buyer for purposes of the notice provisions of § 2-607, and must notify the seller, including a manufacturer, of any breach within a reasonable time after discovery of the breach or be barred from any remedy. Also, while the court found that the Supreme Court of North Carolina had not yet decided the issue of whether an automobile manufacturer can be held liable for a design defect which does not cause an accident but enhances injuries received in the accident, it predicted that the North Carolina court would follow the rationale of *Evans v. General Motors Corporation*, 359 F. 2d 822 (7th Cir.) *cert. denied*, 385 U. S. 836, 87 S. Ct. 83, 17 L.Ed.2d 70 (1966), and hold that automobile manufacturers are not liable in negligence for design defects resulting in "secondary impact" injuries in a collision where the defects did not cause the collision. The plaintiffs took an appeal to the Court of Special Appeals, and we granted a writ of certiorari prior to a decision by that court.

On this appeal plaintiffs challenge the trial court's judgment on both grounds relied on by the trial court. First, plaintiffs argue that, because they are third party beneficiaries, they are not buyers for purposes of § 2-607 of the Maryland Uniform Commercial Code, and were therefore not required to give notice of breach before

maintaining the present breach of warranty action. Second, plaintiffs contend that the negligence count was sufficient to state a cause of action under North Carolina law and that the trial court was in error in predicting that North Carolina would adopt the rationale of *Evans* despite the overwhelming trend towards the adoption of the *Larsen* holding.

### (1)

As we noted in *Frericks*, 274 Md. at 299 n. 4, there is no issue of privity involved in this case. The Maryland Uniform Commercial Code, as amended by Ch. 249, Laws of 1969, provides in § 2-318 that:

> "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer . . . or any other ultimate consumer or user of the goods or person affected thereby if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

The 1969 amendments enlarged the class of third party beneficiaries entitled to the protection of sellers' warranties by adding the words "or any other ultimate consumer or user of the goods or person affected thereby." Additionally, § 2-314 was amended to provide that in the warranty provisions of the Code, §§ 2-314 — 2-318, the word " 'seller' includes the manufacturer, distributor, dealer, wholesaler or other middleman or the retailer." The effect of these changes was to abolish the privity requirements in warranty actions for personal injuries.[1] The issue which we must

---

1. The explanation of these amendments prepared by the Legislative Council states:

"In testimony before the Judiciary Committee, it was discovered that Maryland is far behind other states in extending implied and express warranties to third party beneficiaries. This bill covers the present gap in the Commercial Code in Maryland in situations

now decide is whether one who is not a purchaser, and to whom a seller's warranty extends by virtue of § 2-318, is required to give notice of breach of warranty under § 2-607 or be precluded from a breach of warranty remedy.

Section 2-607 of the Maryland Uniform Commercial Code, insofar as relevant, provides that:

"(3) Where a tender has been accepted

(a) The *buyer* must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;" (Emphasis supplied.)

It is clear that in an action by a *buyer* against his seller for a breach of warranty, the buyer must notify the seller of the alleged breach. Therefore, if the notice requirement of § 2-607 extends beyond the buyer to third party beneficiaries, and if the filing of the lawsuit under the circumstances here would not itself constitute notice, it would appear that the plaintiffs would be precluded from pursuing their warranty actions against General Motors and Anchor, as it is undisputed that they did not give notice of the alleged breach of warranty prior to the filing of the present action. However, we conclude that the plaintiffs, as third party beneficiaries, are not required by § 2-607 to notify the seller of a breach of warranty and are therefore not precluded from pursuing a remedy for breach.[2]

Section 2-607 provides that the "*buyer* must . . . notify the seller of breach . . . ." (Emphasis supplied.) In § 2-103 (1) (a), the definition of "buyer" applicable to § 2-607 is "a person

---

where someone might be hurt in using a defective product who actually did not buy it."

*See* File 156, State Dept. of Legislative Reference.

**2.** Because of our conclusion that a third party beneficiary is not required to give notice, we need not decide whether, under certain circumstances, the notice requirement may be satisfied either by a timely filing of the action or by notice given after the institution of the suit. *See* Hampton v. Gebhardt's Chili Powder Co., 294 F. 2d 172 (9th Cir. 1961); Davidson v. Wee, 93 Ariz. 191, 379 P. 2d 744 (1963) (both decided under the similar notice provision of the Uniform Sales Act). *Cf.* Lynx, Inc. v. Ordnance Products, 273 Md. 1, 17, 327 A. 2d 502 (1974), an action not involving consumer goods or personal injuries.

who buys or contracts to buy goods." Neither John nor Frank Frericks is a buyer within the definition of that term set forth in § 2-103. That § 2-607 is limited to actual "buyers" is explained in 2 Anderson, *Uniform Commercial Code* § 2-607:14, p. 212 (2d ed. 1971):

"When a non-purchaser is entitled to sue a seller for such third person's harm resulting from a condition or defect which in itself was a breach of warranty, the requirement of notice to the seller is not applicable. This follows from the fact that the Code, by its express terms merely bars 'the buyer for failing to give notice.' Conversely, the Code does not bar plaintiffs generally or injured persons generally but only 'the buyer.' That the term 'buyer' is not to be extended beyond its ordinary meaning is made clear by the Code definition that 'buyer' means 'a person buying or contracting to buy goods.' It is therefore clear that when the plaintiff is a 'stranger' to the goods he is not bound by the notice provision."

*See also* Miller, *The Code in Products Liability*, 21 Okla. L. Rev. 411, 434 (1968); L. Frumer and M. Miller, *Products Liability* § 19.05[1] (1976).

Some commentators, however, have concluded that despite the clear language of the statute itself, third party beneficiaries, although not "buyers," are required to give notice. They seem to rely primarily on Comment 5 to § 2-607 which states:

"Under this Title various beneficiaries are given rights for injuries sustained by them because of the seller's breach of warranty. Such a beneficiary does not fall within the reason of the present section in regard to discovery of defects and the giving of notice within a reasonable time after acceptance, since he has nothing to do with acceptance. However, the reason of this section does extend to requiring the beneficiary to notify the seller that an injury has occurred."

*See* Phillips, *Notice of Breach in Sales and Strict Tort Liability Law,* 47 Indiana L. Jour. 457, 463-464 (1972); Hawkland, *A Transactional Guide to the UCC,* par. 1.4802 (1964). General Motors and Anchor have also relied on this Comment 5 to § 2-607 in support of their contention that third party beneficiaries are required to give notice of breach. While the official comments are a valuable aid to construction, they have not been enacted by the Legislature, and "[t]he plain language of the statute cannot be varied by reference to the comments." *Wright v. Bank of California, National Association,* 276 Cal.App.2d 485, 81 Cal. Rptr. 11, 14 (1969). *See* Skilton, *Some Comments on the Comments to the Uniform Commercial Code,* 1966 Wisc. L. Rev. 597.

Relying on the clear language of the statute, the cases have held that the notice provision of § 2-607 applies only to actual "buyers" and not to third party beneficiaries. In *Tomczuk v. Town of Cheshire,* 26 Conn. Supp. 219, 217 A. 2d 71 (1965), the plaintiff, a guest in the home of the purchaser of a bicycle, was permitted to maintain an action for breach of warranty against the manufacturer of the bicycle for injuries caused by defects in the bicycle despite the fact that no notice of the breach had been given to the manufacturer. The court reasoned that no notice need be given by a third party beneficiary before maintaining an action against a manufacturer as the third party beneficiary is not a "buyer" as that term is used in § 2-607.

Likewise, in *Chaffin v. Atlanta Coca Cola Bottling Co.,* 127 Ga. App. 619, 194 S.E.2d 513 (1972), the court held that the plaintiff, whose daughter had purchased a bottle of contaminated soda from a vending machine located in a supermarket, could maintain an action as a third party beneficiary under § 2-318 against the seller supermarket for injuries received when the plaintiff drank the soda even though no notice of breach of warranty had been given to the seller. The court observed that a third party beneficiary is not a buyer, and further stated that § 2-607 can apply only to those plaintiffs to whom the goods have been tendered and who have themselves accepted the goods:

"These notice provisions of the breach cannot apply

to plaintiff, a third party beneficiary, under UCC § 2-318, for as to the third party there has been no tender of the goods by the seller ... and no acceptance by plaintiff. She had nothing to do with the acceptance as she was not the buyer." 194 S.E.2d at 515.

The same conclusion was reached by the court in *Menard v. Great Atlantic & Pacific Tea Co.*, 22 Mass.A.D. 170, 175-176 (1961). *See also Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P. 2d 897 (1962), and *Wights v. Staff Jennings, Inc.*, 241 Ore. 301, 405 P. 2d 624 (1965), decided under § 69 of the Uniform Sales Act, the predecessor of § 2-607 (3) (a), both of which held that a non-purchaser beneficiary of a seller's warranty is not required to give notice of breach as a precondition to maintaining an action for personal injuries.

It has been stated that the purpose of the notice requirement of § 2-607 (3) (a) is to inform the seller of a defect in the transaction, enabling him to correct the defect if possible and to minimize any damages. *Wagner Tractor, Inc. v. Shields*, 381 F. 2d 441, 445 (9th Cir. 1967). In a case involving a personal injury to a non-buyer, the requirement would seem to serve no purpose, as it would be impossible to correct the defect or minimize damages after the injury has already occurred.

General Motors and Anchor contend, however, that the notice requirement serves an additional purpose in that it protects the seller from "stale claims" and enables the seller "to marshall evidence for a defense." They argue that this purpose is as valid whether the plaintiff is a buyer or a third party beneficiary. Additionally, General Motors and Anchor argue that it would be inequitable to allow a third party beneficiary to enjoy the same rights as a purchaser while relieving the third party beneficiary of the obligations imposed on the buyer.

In support of their contention that a third party beneficiary is within the purpose of the notice provisions, the defendants have cited several cases which have held that the notice requirement of § 2-607 is applicable in cases

involving personal injury. *See, e.g., Pritchard v. Liggett & Myers Tobacco Company*, 295 F. 2d 292 (3d Cir. 1961); *Berry v. G. D. Searle & Co.*, 56 Ill. 2d 548, 309 N.E.2d 550 (1974); *San Antonio v. Warwick Club Ginger Ale Co.*, 104 R. I. 700, 248 A. 2d 778 (1968). All of the cases relied on by General Motors and Anchor, however, are distinguishable in that they involved "buyers" as defined in § 2-103 and thus are clearly within the purview of § 2-607. They have cited no case, nor have we found any case, in which the word "buyer" has been extended to encompass third party beneficiaries for the purposes of § 2-607 as the defendants now urge.

We are not free, in view of the unambiguous language of § 2-607 requiring only the buyer to notify the seller of breach, and the definition of buyer in § 2-103, to extend that requirement to encompass the plaintiffs here. As the defendants correctly note, it is a cardinal rule of statutory construction that a statute should be construed so as to give effect to the real intent of the Legislature. But in ascertaining that intent, a court must first look to the language of the statute. "If there is no ambiguity or obscurity in the language of the statute, there is usually no need to look elsewhere to ascertain the intent of the legislature." *Md.-Nat'l Cap. P. & P. v. Rockville*, 272 Md. 550, 555-556, 325 A. 2d 748 (1974). Here there is no ambiguity in the language of the statute. Section 2-607 requires only the "buyer" to notify the seller of a breach, and § 2-103 clearly defines "buyer" so as to exclude third party beneficiaries. As the court in *Tomczuk v. Town of Cheshire, supra,* said in rejecting a similar contention (217 A. 2d at 73):

> "Simply because the legislature created certain rights in a third party beneficiary as to express or implied warranties, in adopting § 42a-2-318, does not mean that by implication such a beneficiary must give notice of an alleged breach to the manufacturer. If it were the legislative intent to require such notice, the code would have said so. Nowhere is there any indication that the manufacturer and the third party beneficiary are to be construed as seller and buyer, respectively. Just

the contrary appears evident. It may have had its own reason for not setting forth a requirement of giving notice by a third party beneficiary to the manufacturer. Even though it might seem more just or equitable that such a beneficiary be required to give notice in the same manner as a buyer, this court cannot legislate what Union Cycle seeks here."

In construing a statute, "[w]e must confine ourselves to the statute as written." *In re Appeals Nos. 1022 & 1081,* 278 Md. 174, 178, 359 A. 2d 556, 559 (1976).

Apart from the lack of ambiguity in the language of the statute, we still would not agree with General Motors and Anchor that the Legislature intended that third party beneficiaries be bound by the notice requirement. In enacting the 1969 amendments to §§ 2-318 and 2-314, the Legislature not only enlarged the class of persons to be protected by warranties in the event of personal injury caused by defective products, but also eliminated the requirement of privity as to manufacturers and sellers within the distributive chain, often a major obstacle to recovery. *See, e.g., Blankenship v. Morrison Mach. Co.,* 255 Md. 241, 246-247, 257 A. 2d 430 (1969). Although the Legislature in the 1969 amendments chose to redefine the word "seller" as used in the warranty provisions to include manufacturers and those in the distributive chain, it did not similarly redefine the word "buyer" to include the expanded class of third party beneficiaries, but instead retained the definition of that term found in § 2-103. This would indicate that while the remedial rights of the Code were to be extended to an enlarged class of persons, the procedural obligation of notice imposed on actual buyers was not to be extended to that group. This extension of rights to third party beneficiaries without the requirement of notice imposed on buyers is neither "inequitable" nor "illogical" as the defendants argue, in view of the fact that the third party beneficiary's right to recover is limited in § 2-318 to the situation where personal injury results from the breach of warranty whereas the buyer's right to recover is not so

limited. And with respect to the defendants' argument that sellers may be faced with stale personal injury claims, it is the function of the statute of limitations contained in § 2-725 of the Maryland Uniform Commercial Code to protect defendants against such claims. The four year period of limitations in § 2-725 is fully applicable to actions by injured third party beneficiaries.

Consequently, the plaintiffs' breach of warranty claims in this case are not barred by their failure to notify the seller of the breach.

(2)

General Motors also attacks the sufficiency of the negligence count, arguing that under North Carolina law a manufacturer is not liable in negligence for defects which are not the cause of the accident.

The parties have referred us to no decisions by the North Carolina Supreme Court, and we are aware of none, on the question of whether, under North Carolina law, the principles of *Larsen* or of *Evans* would apply to a case involving secondary impact injuries in an automobile collision, where the injuries result from an allegedly defective design.

An examination of the North Carolina cases indicates that the duty of a manufacturer in the design, construction and inspection of a product is governed by traditional principles of tort law. Thus, a manufacturer has a duty to use reasonable care in the manufacture and inspection of a truck, *Gwyn v. Lucky City Motors, Inc.*, 252 N. C. 123, 113 S.E.2d 302, 305 (1960), and to design a product which is reasonably safe for anticipated use and stress for which it is manufactured, *Swaney v. Peden Steel Company*, 259 N. C. 531, 131 S.E.2d 601, 606-607 (1963). Under North Carolina law, "[a] manufacturer's negligence may be found over an area quite as broad as his whole activity in preparing and selling the product *or in designing the article.*" *Dupree v. Batts*, 276 N. C. 68, 170 S.E.2d 918, 922 (1969) (emphasis supplied). In *Volkswagen of America v. Young, supra,* 272 Md. at 214-215, we expressed the view that *"Larsen v.*

*General Motors Corporation, supra,* and the cases following it, are more in accord with traditional negligence principles than *Evans v. General Motors Corporation, supra."* Since the decisions of the North Carolina Supreme Court dealing with a manufacturer's obligations in regard to his products reflect the application of traditional negligence principles, we think it more likely that the North Carolina Court would apply the *Larsen* principles to "automobile crashworthiness" cases such as the present one.

General Motors has relied upon a decision of the United States District Court for the Western District of North Carolina, predicting that the North Carolina Supreme Court would follow *Evans. Alexander v. Seaboard Air Line Railroad Company,* 346 F. Supp. 320 (W.D. N.C. 1971), *aff'd per curiam* by the United States Court of Appeals for the Fourth Circuit, No. 71-1915, April 25, 1972. However, subsequent to the filing of briefs and oral argument in the instant case, the United States District Court for the Eastern District of North Carolina handed down its opinion in *Isaacson v. Toyota Motor Sales, U.S.A. Inc.,* F. Supp. (No. 74-18-Civ-4, filed June 28, 1976), petition for appeal pursuant to 28 U.S.C. 1292 (3) (b) denied by the United States Court of Appeals for the Fourth Circuit, August 10, 1976. The court in *Isaacson* held that the North Carolina Supreme Court would follow the principles of *Larsen.* Although these decisions of federal courts on a matter of state law are not binding either on the courts of that state, *In re Sloan's Estate,* 222 Cal.App.2d 283, 35 Cal. Rptr. 167, 174 (1963), or upon this Court in ascertaining the law of a sister state, *see Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 171, 215 A. 2d 812, 27 A.L.R.3d 379, *cert. denied,* 385 U. S. 833, 87 S. Ct. 73, 17 L.Ed.2d 68 (1966), they are highly persuasive in determining the law of a sister state.

In *Alexander v. Seaboard Air Line Railroad Company, supra,* a Volkswagen sedan collided with a 114-ton locomotive traveling approximately forty-five miles per hour pulling twenty-two freight cars. Immediately after impact the car burst into flames. The plaintiff alleged negligent design, contending that " 'with reasonable care under the

standards then existing for automotive manufacturers . . . a vehicle should not have been designed with a gas cap that could fly off in a collision, with a tank that would deform, [and] with a front end that allowed crushing of the tank . . . .' " *Alexander, supra,* 346 F. Supp. at 322. The court concluded that under North Carolina law, a manufacturer is not liable for alleged design defects which are not the cause of the accident.

In *Isaacson v. Toyota Motor Sales, supra,* an automobile was struck from behind while stopped for a drawbridge. The automobile burst into flames and the occupants suffered severe burns resulting in death. An action was brought against the manufacturer, alleging negligence in the design of the fuel system unreasonably enhancing the danger of injury to the occupants in the event of a rear-end collision. After extensively reviewing North Carolina products liability cases, the court denied the defendant's motion for summary judgment, declining to follow *Alexander* and predicting that the North Carolina Supreme Court, if faced with the issue of an automobile manufacturer's liability for "enhanced injuries caused by defective design," would follow *Larsen.*

We believe that the *Isaacson* holding regarding North Carolina law is more likely to prove to be correct. As noted by Chief Judge Larkins in *Isaacson,* the *Alexander* court's observation that only a minority of courts follow *Larsen* is no longer true today. In fact, the vast majority of courts today adhere to the *Larsen* holding that an automobile manufacturer may be liable for "secondary impact" injuries due to design defect, although the defect did not cause the initial collision. Also, the court in *Isaacson,* relying on the Fourth Circuit's affirmance of the decision in *Alexander,* pointed out that the plaintiffs in *Alexander* would not have been entitled to recover even under the principles of *Larsen.*[3]

In light of the North Carolina Supreme Court's product

---

**3.** The Fourth Circuit in *Alexander* affirmed the decision on the assumption that the automobile manufacturer had a duty to design a reasonably safe vehicle, but that the alleged defective design was not the proximate cause of the injury.

liability decisions and the most recent North Carolina federal court case which finds that North Carolina law embodies the principles of *Larsen*, we conclude that the negligence count in the present case is sufficient to state a cause of action under North Carolina law.

> *Judgment reversed.*
> *Case remanded to the Circuit Court for Cecil County for proceedings consistent with this opinion.*
> *Appellees to pay costs.*